# Paturzo et al., Appellants, *v.* Ferguson et al.

*Contract—Sales—Memorandum in writing—Several writings—Oral testimony—Act of May 15, 1919, P. L. 543.*

1. Where several writings make up a contract of sale, the general rule is that the reference, relation or connection of the writings to or with each other must appear on their face.

2. In such case the writings must contain either an express reference to each other or internal evidence of their unity, relation or connection.

3. If the writing is not complete in itself and oral evidence be required to supply omissions, then the whole is reduced to parol, and, though equity may reform, it can no longer specifically enforce.

4. The Sales Act of May 15, 1919, P. L. 543, may be satisfied where the memorandum is made up of several papers, which to-

gether will furnish the essential terms, but the separate writings must have internal reference one to another.

5. In such case oral testimony may be offered to identify and show the connection between them but not to supply proof of the terms of the contract itself.

Argued March 26, 1924. Appeal, No. 157, Jan. T., 1924, by plaintiffs, from order of C. P. No. 4, Phila. Co., Dec. T., 1916, No. 1950, refusing to take off nonsuit, in case of Julius C. Paturzo et al., trading as the Arpat Trading Company v. Alexander C. Ferguson et al., trading as Ferguson Brothers. Before FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Assumpsit for breach of contract. Before FINLETTER, J.

The opinion of the Supreme Court states the facts.
Nonsuit; refusal to take off. Plaintiffs appealed.

*Error assigned* was, order, quoting record.

*Isaac Hassler,* for appellants.—If a vendee requests or directs the vendee how to perform his (the vendee's) side, and the vendee does that,—particularly if the vendee does what the contract provides plus something requested by the vendor,—the vendor cannot assert the statute of frauds, which has no application in such case: Leather Cloth Co. v. Hieronimus, L. R. 10 Q. B. 140; Swain v. Seamens, 9 Wall. 254; Producer's Coke Co. v. Hoover, 268 Pa. 104; Manufacturers' L. & H. Co. v. Lamp, 269 Pa. 517.

*M. Hampton Todd,* with him *A. Culver Boyd,* for appellee.—When it is sought to establish a contract by letters which pass between the parties, containing proposals, answers and counter-proposals, it must be made to appear that at some point in the correspondence there was a definite and unqualified proposal by one party

which was unconditionally and without qualification accepted by the other party: Clements v. Bolster, 6 Pa. Superior Ct. 411; Slaymaker v. Irwin, 4 Wharton 369.

OPINION BY MR. JUSTICE FRAZER, April 28, 1924:

Plaintiffs, vendees of a quantity of sulphate of copper, sued the vendors to recover damages for failure to deliver in accordance with the contract. The court below entered a nonsuit and assigned as its reason plaintiff's failure to perform their part, which called for the furnishing of a letter of credit, whereupon defendants elected to rescind.

Under date of January 3, 1916, defendants wrote plaintiffs offering to sell the article in question on terms stated. These terms not being acceptable to plaintiffs, a telephone conversation with defendants was had whereby an arrangement on terms satisfactory to both was reached and embodied in a letter from plaintiffs to defendants, dated January 5, 1916, to which defendants replied under date of January 7, 1916, acknowledging receipt of the letter and advising that a letter of credit would be arranged for within three or four days. Delay followed in procuring the credit and on January 12th defendants telegraphed plaintiffs stating they could hold the matter open no longer, to which plaintiffs replied by wire saying the letter of credit would be ready by three o'clock January 13th. At five minutes past three on that day, the credit letter not having been received, defendants wired plaintiffs: "Deal absolutely irrevocably off and renewal impossible." On the following day plaintiffs called on defendants' manager and remonstrated in regard to his action saying if another day's time had been given the letter of credit would have been obtained, to which the manager replied "All right, go ahead and let us have the credit." Pursuant thereto, on January 18th plaintiffs' bankers wrote defendants advising they were prepared to accept a draft amounting to $31,000 against the bill of lading for the merchandise in ques-

tion.   Discovery was later made that by reason of an error in computing the weight at 2,000 instead of 2,240 pounds to the ton the credit offered was not sufficient in amount and should have been in the sum of $36,000. Plaintiffs agreed to correct the error and also, at the request of defendants, to give fifteen days additional time for shipment, provided the letter of credit stated the goods were sold for export and not for either domestic consumption or the South American market.   Defendants also requested that the bankers mark the bill of credit irrevocable for four or five days, that they "would have time to make their own arrangements."   Plaintiffs testified all these changes were made as requested and in this they were corroborated by a letter from their bankers to defendants, dated January 20th, referring to their former letter of the 18th and setting forth they were "advised of the following modification viz: L. C. irrevocable until 4:00 P. M. Thursday, January 27th, amount about $36,000;  goods to be shipped from factory not later than March 15th-16th.   Ton to be 2,240 lbs. not 2,000 lbs.   Agree goods are not to be sold in this market nor to be shipped to South America."   On the following day defendants wrote plaintiffs' bankers stating they would reject a letter of credit "unless you have further modifications as follows: "We are to ship the goods to an Italian port by an Italian or some other steamer sailing to that port from New York City, and the letter of credit is to be made irrevocable to March 15th."   A copy of this letter was enclosed in a letter to plaintiffs of the same date, in which defendants informed the former, "We have communicated with our people and had a talk with Drexel & Company and have written them as per the enclosed carbon copy.   This is the last chance you will have of getting the goods and you had better get busy immediately and arrange as per outline."   Plaintiffs replied to this, remonstrating against the attempt to incorporate in the contract something in addition to what had been agreed upon, and to

this letter defendants replied: "If you will refer to our letter of January 3d, you will see that we said distinctly for February shipment to Italy." This ended the negotiations and on refusal of defendants to deliver the sulphate of copper this action was instituted to recover for loss sustained by reason of the alleged breach of contract. As above stated, the court below entered a nonsuit which it subsequently refused to take off, and plaintiffs appealed.

A careful analysis of the above correspondence, in the light of testimony submitted in behalf of plaintiffs, shows the original offer of January 3d, to which defendants referred in the last letter above mentioned, was not accepted because of the clause limiting the destination of the merchandise to Italy, plaintiffs desiring to buy it for export generally. The letter of January 5th indicates the goods were sold "only for export and not for domestic use" and this, with defendants' reply of the 7th, constituted the complete agreement and eliminates the letter of January 3d from the contract. This raises the question whether the original letters of January 5th and 7th, and supplemented by the subsequent letters and telegrams which finally culminated in the modified letter of credit, under date of January 20th, embodying all the changes suggested by defendants, constituted a complete contract.

Had the matter ended with the telegram of January 13th calling the deal "absolutely irrevocably off" no question could have arisen. Plaintiffs were clearly in default at that time. The rescission was voluntarily modified, however, by defendants advising plaintiffs to "go ahead and get the credit." The testimony of plaintiffs that they did so is fully corroborated by the two letters from their bankers. The terms and conditions imposed by defendants as the price of their waiver were fully complied with and the delivery of the revised letter of credit of January 20th, embodying all the terms stipulated, constituted a complete agreement, as the minds of

the parties had fully met in every detail of the contract, and defendants were not at liberty to impose further terms and conditions, as was attempted by the letter of January 21st, unless, for some reason, the contract was not a binding one.

The telegram of January 13th was followed by further negotiations amounting to a waiver of the rescission. These negotiations were oral, however, and we find an absence of any further writings from defendants until the letter of January 20th, which contains nothing in itself to show a waiver of the previous rescission but leaves all negotiations leading up to the reinstatement of the contract to parol evidence. "It is a general rule that the reference, relation, or connection of the writings to or with each other must appear on their face. The writings must contain either an express reference to each other or internal evidence of their unity, relation or connection": 27 C. J. 261, sec. 309. This general rule was recognized in Manufacturers Light & Heat Co. v. Lamp, 269 Pa. 517, where, after stating that all essentials of an agreement must appear in writing, we said further (page 520) : "If not complete in itself, and oral evidence be required to supply omissions, then the whole is reduced to parol, and, though equity might reform, it can no longer specifically enforce: Safe Deposit & Trust Co. v. Diamond Coal & Coke Co., 234 Pa. 100; Rineer v. Collins, 156 Pa. 342. It is true that the statute may be satisfied where the memorandum is made up of several papers, which together furnish the essential terms; but the separate writings must bear internal reference one to the other. In such case, oral testimony may be offered to identify and show the connection between them (Title G. & S. Co. v. Lippincott, 252 Pa. 112), but such evidence cannot be used to supply proof of the terms of the contract itself: Moore v. Eisaman, 201 Pa. 190. Illustrations of the application of the rule are found in Llewellyn v. Sunnyside Coal Co., 242 Pa. 517; Weisenberger v. Huebner, 264 Pa.

316; and Franklin Sugar Refining Co. v. Howell, 274 Pa. 190, in each of which this court concluded there was insufficient reference in the signed paper to incorporate an unsigned one. In Mason-Heflin Coal Co. v. Currie, 270 Pa. 221, we held that a written agreement with a third person, which did not on its face express an intent to sell coal or an admission that such contract had been made, was not a sufficient note or memorandum in writing to satisfy the requirements of section 4 of the Sales Act. In the present case the letter of January 21st does not show on its face that the earlier "absolute revocation" of the contract had been waived and the agreement reinstated.

The judgment is affirmed.