420 A.2d 405

**H. James CONAWAY, Jr., Receiver of First State Life Insurance Company of America, Inc., Appellee,**

v.

**20TH CENTURY CORPORATION, Appellant.**

Supreme Court of Pennsylvania.

Argued May 20, 1980.

Decided Sept. 22, 1980.

Clyde W. McIntyre, Harrisburg, for appellant.

Bruce E. Cooper, Stewart L. Cohen, Harrisburg, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION

EAGEN, Chief Justice.

H. James Conaway, Jr., the receiver of First State Life Insurance Company of America, Inc. (Conaway) filed a complaint in assumpsit against 20th Century Corporation (Century). Conaway's action sought to recover damages for failure to comply with an alleged oral contract between the parent corporation of First State Life and Century. According to the complaint, the contract concerned a promise by Century to purchase 500,000 shares of capital stock of First State Life for $250,000.

On November 6, 1974, Century filed preliminary objections to the complaint in the nature of a demurrer alleging, inter alia, that the cause of action was barred by the statute of frauds. On September 29, 1975, the trial court sustained Century's preliminary objections and dismissed Conaway's complaint. The court's order dismissing the complaint stated: "AND NOW, this 29th day of September, 1975, [Century's] demurrer is sustained in accordance with the above opinion, and the action dismissed." The opinion indicated that the demurrer was being granted on the basis of the statute of frauds; that, given this ruling, the other issues raised by the preliminary objections did not have to be discussed; that an implication in Conaway's brief on preliminary objections that other writings might exist to satisfy the statute of frauds could not cure the deficiencies of the complaint; that, if such writings existed, "the proper procedure would be to petition the court for reconsideration of the demurrer, attaching the writings"; and, that "[i]n this manner the court may consider whether such material overcomes the bar of the statute of frauds and whether [Conaway] should be granted leave to amend the complaint." No appeal was timely taken from that order.

On October 20, 1975, the trial court entered an order allowing Conaway twenty days from that date to file a petition for reconsideration. On November 7, 1975, a petition for reconsideration was filed. Attached to the petition were several writings which Conaway alleged satisfied the statute of frauds. After Century responded to the petition and after Conaway responded to new matter raised by Century, the matter was argued before the trial court en banc. On March 19, 1976, the trial court issued a per curiam 'Memorandum on Petition for Reconsideration" and order. The memorandum stated, inter alia, that the court had "reviewed the items attached to [Conaway's] petition and find . . . they do not overcome the bar of the statute." The memorandum clearly addressed the merits of whether the writings attached to the petition for reconsideration satisfied the statute of frauds. The order merely denied the petition for reconsideration.

On April 15, 1976, Conaway appealed only the March 19, 1976 order of the trial court to the Superior Court. On July 12, 1978, a divided Superior Court reversed both the March 19, 1976 order which denied reconsideration and the September 29, 1975 order which sustained Century's preliminary objections, and remanded for further proceedings.[1] In an opinion by Judge Price, the majority ruled that the writings attached to Conaway's petition for reconsideration "afford[ed] a *basis* for believing that the offered oral evidence rest[ed] on a contract actually made," and that the court erred in granting the demurrer. We granted Century's petition for allowance of appeal.

Century initially contends that the Superior Court lacked jurisdiction over Conaway's appeal to that court because the appeal was untimely. We cannot agree.

■ Before discussing the jurisdictional issue, we are constrained to point out, as did the majority of the Superior

---

1. Judge Price authored the majority opinion. Judge Spaeth filed a dissenting opinion in which Judge Van der Voort joined.

Court,[2] that Century's preliminary objections in the nature of a demurrer which raised a waivable statute of frauds were improper since such a claim is properly raised in new matter. See Pa.R.C.P. 1017 and 1030; *Duffee v. Judson*, 251 Pa.Super. 406, 380 A.2d 843 (1977). But we shall overlook this procedural defect because, as the Superior Court pointed out, no objection on this ground was raised. Cf. *Lamp v. Heyman*, 469 Pa. 465, 366 A.2d 882 (1976).

With regard to jurisdiction of the appeal, the Superior Court acknowledged that the appeal would be untimely if from the order of September 29, 1975, but ruled the appeal was timely because it was from the order of March 19, 1976. As to the failure to appeal the order of September 19, 1975, the Superior Court indicated that, in its view, the trial court had, in effect, granted reconsideration and thereby caused the time to appeal to run anew from the entry of the decision on reconsideration pursuant to Pa.R.A.P. 1701(b)(3) thereby excusing the failure to timely appeal the order of September 19, 1975.

While we do not agree with the Superior Court's rationale, we do agree that the appeal was timely filed in that court.

■ We need not detail all of our reasons for differing with the Superior Court because it suffices to point out that, if Pa.R.A.P. 1701(b)(3) were to be applied instantly,[3] the order of October 20, 1975 did not expressly grant reconsider-

2. The dissenters in the Superior Court expressed no disagreement with the majority on the procedural and jurisdictional questions in this case. Indeed, by reaching the merits of the issue of the statute of frauds and recommending affirmance on that basis, the dissenters implied agreement with the majority on the disposition of the procedural and jurisdictional questions.

3. Pa.R.A.P. 1701 did not become effective until July 1, 1976, but a similar procedure existed under our case law. In *Alco Parking Corp. v. Pittsburgh*, 453 Pa. 245, 307 A.2d 851 (1973) (plurality opinion) *rev'd. on other grounds*, 417 U.S. 369, 94 S.Ct. 2291, 41 L.Ed.2d 132 (1974), the plurality opinion indicated a grant of reargument *within the appeal period* necessarily stays the proceedings and renders timely an appeal filed within thirty days of disposition after reargument. Of course, as with Pa.R.A.P. 1701(b)(3), reargument was not instantly granted *within the appeal period* after the order of September 29, 1975.

ation and the order of March 19, 1976, even if viewed as granting reconsideration, was not filed within the time prescribed for filing a notice of appeal from the order of September 29, 1975. Hence, the requirements of Pa.R.A.P. 1701(b)(3) were not met, and this case may not be viewed as one wherein reconsideration was timely granted and the time in which to appeal thereby caused to run anew.

Obviously, the Superior Court's rationale was an attempt to overcome the blatant injustice which would have resulted had it held the appeal untimely where the trial court's order, via its reference to its opinion, invited the presentation of additional writings, i. e. essentially the presentation of evidence or an amendment to the complaint subject to court approval. We concur with the judgment of the Superior Court that an injustice would have resulted if the appeal were held untimely because, in effect, the order of September 29, 1975 was not final, and hence, not appealable. Accordingly, no appeal from that order was required.

In *T. C. R. Realty, Inc. v. Cox*, 472 Pa. 331, 337, 372 A.2d 721, 724 (1977), we said:

"In ascertaining what is a 'final order,' we have looked beyond the technical effect of the adjudication to its practical ramifications. *Bell v. Consumer Discount Company*, 465 Pa. 225, 348 A.2d 734 (1975). We have variously defined a final order as one which ends the litigation, or alternatively disposes of the entire case. *Piltzer v. Independence Savings and Loan Association*, 456 Pa. 402, 404, 319 A.2d 677, 678 (1974); *James Banda, Inc. v. Virginia Manor Apartments, Inc.*, 451 Pa. 408, 409, 303 A.2d 925, 926 (1973). Conversely phrased, an order is interlocutory and not final unless it effectively puts the litigant 'out of court.' *Ventura v. Skylark Motel, Inc.*, 431 Pa. 459, 463, 246 A.2d 353, 355 (1968)."

Instantly, the order of September 29, 1975 purported, on the one hand, to put Conaway out of court, but, on the other hand, invited him back into court. The order dismissed the action, and sustained the demurrer "in accordance with the above opinion." The "above opinion" invited

via "reconsideration" the presentation to the court of writings it had not yet considered to determine if they overcame the statute of frauds and whether leave to amend the complaint should be granted. A petition for reconsideration of an order asks the court to reconsider its order *in light of the record it previously considered.* Neither the writings nor a petition to amend the complaint were of record and the court's order, in effect, allowed Conaway to add the writings to the record. *By allowing him to add to the record* and stating it would thereby be permitted to determine "whether such material overcomes the bar of the statute of frauds and whether [Conaway] should be granted leave to amend the complaint," neither of which issues the court had yet to consider, the court specifically indicated that the litigation was not at an end; that its order was not intended to dispose of the entire case; and, that Conaway was not out of court. Hence, whatever finality the court expressed on the one hand, it destroyed on the other, and the practical ramification of the order of September 29, 1975 was not to put Conaway out of court. Accordingly, the order of September 29, 1975 was not final.

■ Since the appeal was timely filed from the denial of the petition for reconsideration, which effectively sustained preliminary objections after consideration of the writings[4] and, hence, constituted the first final order, the Superior Court was correct in accepting jurisdiction.

With regard to the statute of frauds issue, Century asserts the Superior Court majority erred in holding the writings submitted with Conaway's petition for reconsideration satisfied the statute of frauds. Century argues that the writings relied on merely indicate the parties were involved in "negotiations looking forward to a possible contract" and that the writings were not sufficient to satisfy the requirement of

4. Of course, the fact that the court considered the writings merely reinforces our view that the order of September 29, 1975 was not intended to put Conaway out of court because consideration of the writings cannot be viewed as reconsideration of the prior order because it involved consideration of materials not of record when the prior order was entered.

the applicable statute of frauds, namely, that the writing be "sufficient to indicate that a contract has been made for sale of a stated quantity of described securities at a defined or stated price . . . ." [5] After careful review of the record, we agree with Century; accordingly, we reverse.

In chronological order, the first writing relied upon by Conaway is a letter, dated May 12, 1967, addressed to the Insurance Commissioner of Delaware. The letter, as set forth in the reproduced record, is a copy of a letter apparently sent to the Insurance Commissioner by the Executive Vice President of Century. The letter concerns a "plan," which Century proposed to submit to First State Life and its parent company, to supply additional capital to First State Life. Additional capital was apparently necessary to get the approval of the Insurance Commissioner. His approval was an apparent pre–requisite to First State Life's commencement of underwriting insurance in Delaware. Century pro-

5. Uniform Commercial Code, Act of October 2, 1959, P.L. 1023, § 8, 12A P.S. § 8–319 (originally enacted as the Act of April 6, 1953, P.L. 3, § 8–319, current version at 13 Pa.C.S.A. § 8319 (Supp.1980)) (hereinafter cited as UCC), which provides as follows:

"A contract for the sale of securities is not enforceable by way of action or defense unless:

(a) there is some writing signed by the party against whom enforcement is sought or by his authorized agent or broker sufficient to indicate that a contract has been made for sale of a stated quantity of described securities at a defined or stated price; or

(b) delivery of the security has been accepted or payment has been made but the contract is enforceable under this provision only to the extent of such delivery or payment; or

(c) within a reasonable time a writing in confirmation of the sale or purchase and sufficient against the sender under paragraph (a) has been received by the party against whom enforcement is sought and he has failed to send written objection to its contents within ten days after its receipt; or

(d) the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract was made for sale of a stated quantity of described securities at a defined or stated price."

At all stages of this litigation, the parties have conceded that subsections (b) and (c) above are not applicable; however, Conaway has contended below and now contends here that the alleged oral contract is enforceable because subsections (a) and (d) above have been satisfied. The Superior Court majority opined that Conaway satisfied subsection (a).

posed as its "plan" to invest $249,390 in exchange for 498,780 shares of common stock in First State Life. The letter closes with the following request:

"Further, since the proposed acquisition of the securities of the Life Company [First State Life] is in the *tentative stages*, we would appreciate your keeping this matter confidential until we have had an opportunity to discuss any questions which you may have." [Emphasis added.]

The second writing relied upon by Conaway is a letter, dated June 30, 1967, from the general counsel for Century which provides as follows:

"I assume you have mailed the notice to stockholders of the special meeting to act upon our offer. I further assume that the meeting will be held on July 7, 1967. However, I do not know the time of day it is to be held. I would also, appreciate receiving three copies of the notice in order to prepare for the meeting."

The final writing relied upon by Conaway is an affidavit by the President of Century, dated March 15, 1969, which was submitted to the United States District Court for the District of Delaware in related federal litigation. The affidavit does not acknowledge the existence of any contract or agreement to purchase common stock of First State Life. The letter to the Insurance Commissioner, dated May 12, 1967, is an exhibit attached and referred to in the affidavit. The affidavit only acknowledges the "plan" outlined in the May 1967 letter to the Insurance Commissioner and further provides as follows:

"5. In early May, 1967, George R. Clark, representing First State Life Insurance Investors, Inc. ('Investors') [the parent company of First State Life], came to the offices of 20th Century in Harrisburg. He explained that Investors had been selling its stock in order to get enough money to apply for a certificate of authority for a life insurance company which it organized ('First State Life') but indicated that further sales of its stock had been enjoined and asked if 20th Century would be interested in helping to finance the life company;

6. 20th Century was interested in this proposal and submitted a *plan* to Commissioner Short, the Insurance Commissioner of Delaware, for his approval. A copy of said *plan* is attached hereto as Exhibit 1 [the May 12, 1967 letter];

7. While this *plan* was never approved or disapproved by Commissioner Short, it was approved by the stockholders of Investors and by the United States District Court for the District of Delaware.... " [Emphasis added.]

Although not relied upon herein by Conaway, another letter, dated December 18, 1967, is attached to the petition for reconsideration. This letter is addressed to the incorporators of First State Life and is signed by officers of Century. This letter is also an exhibit referred and attached to the affidavit of Century's President which was submitted to the federal court. The letter states: "[W]e find it necessary to terminate any further discussions with either of the Companies [First State Life and its parent] in connection with the *proposed* acquisition of stock by 20th Century Corporation." [Emphasis added.] [6]

■■■ As noted above, under the UCC, a contract for the sale of securities is not enforceable unless there is some writing signed by the party to be charged or by his authorized agent sufficient to indicate that "*a contract has been made* for sale of a stated quantity of described securities at a defined or stated price ...*.*" (Emphasis added.) UCC, 12A P.S. § 8–319. See *Tripp v. Pay'N Pak Stores, Inc.*, 268 Or. 1, 518 P.2d 1298 (1974). Cf. *Arcuri v. Weiss*, 198 Pa.Super. 506, 184 A.2d 24 (1962) (allocatur denied); *Riegel Fiber Corp. v. Anderson Gin Co.*, 512 F.2d 784 (5th Cir. 1975).[7]

**6.** Although not relied on here by Conaway and not relied on by the Superior Court majority below, another writing, apparently prepared by personnel associated with the parent company of First State Life, is attached to the complaint filed by Conaway. This exhibit to the complaint refers to a "plan" by Century "which *proposes* to finance the capitalization of First State Life...." [Emphasis added.] This writing is not signed by Century officials.

**7.** These decisions concern the UCC statute of frauds applicable to contracts for the sale of goods. UCC, 12A P.S. § 2–201. These

Moreover, several writings may be used to satisfy the statute of frauds if they bear either an express reference one to another or internal evidence of their interrelation. See *Paturzo v. Ferguson*, 280 Pa. 379, 124 A. 481 (1924). See also *Brister & Koester Lumber Corp. v. American Lumber Corp.*, 356 Pa. 33, 50 A.2d 672 (1947); *Swift & Co. v. Meehan*, 283 Pa. 429, 129 A. 324 (1925); *In re Flying W. Airways, Inc.*, 341 F.Supp. 26 (E.D.Pa.1972). Finally, writings which show that the parties are still in the process of negotiation, *Derden v. Morris*, 247 So.2d 838 (Miss.1971), which look toward some future contract, *In re Flying W. Airways, Inc.*, supra, or which only evidence an offer, *Alice v. Robett Manufacturing Co.*, 328 F.Supp. 1377 (N.D.Ga.1970), aff'd, 445 F.2d 316 (5th Cir. 1971), do not satisfy the writing requirement of the statute of frauds.

Instantly, the letters of May and December 1967 are signed by officers of Century. The June 1967 letter is signed by Century's general counsel. The affidavit submitted to the federal court is signed by the President of Century and explicitly refers to the former two letters above. All of these writings appear interrelated; however, even when we consider all of these writings, they do not satisfy the writing requirement of the statute of frauds because they do not demonstrate that a contract for sale "has been made." UCC, 12A P.S. § 8–319. These writings, at best, indicate a "plan," "proposal," or "offer" which look toward some future contract but which do not evidence an existing contractual relationship. Accordingly, the alleged oral contract is unenforceable. *In re Flying W. Airways, Inc.*, supra; *Derden v. Morris*, supra; *Alice v. Robett Manufacturing Co.*, supra.

decisions and others cited hereinafter which apply and construe Section 2–201 are nevertheless instructive because the pertinent language in Section 2–201 substantially parallels the pertinent language in Section 8–319 and because the UCC Comment to Section 8–319 states that Section 8–319 was changed to conform "to the policy of the provisions in the Article on Sales (Article 2) on sale of goods."

Additionally, although the federal court affidavit indicates that the shareholders of the parent corporation of First State Life approved a proposal submitted by Century, it cannot be ascertained whether such approval of the proposal was the equivalent of an offer and acceptance or merely steps preliminary to a binding agreement. As the dissenting opinion in the Superior Court stated:

"It may be that 20th Century and the officers and directors of First State Investors [the parent corporation of First State Life] had indeed made a contract that only needed to be ratified by the stockholders of First State Investors. However, it may also be that before the officers and directors of First State Investors could proceed to make a contract with 20th Century they needed the consent of the stockholders. It may also be that 20th Century wanted to know if its plan would be acceptable to the stockholders before it took the trouble to make up final terms and present them in a formal offer. To decide among these possibilities is to speculate on whether or not a contract was made—something the Statute of Frauds is intended to forbid."

*Conaway v. 20th Century Corp.*, 256 Pa.Super. 1, 8–9, 389 A.2d 146, 150 (1978) (Spaeth, J., dissenting, joined by Van der Voort, J.). Cf. *Swift & Co. v. Meehan*, supra (upon consideration of correspondence it was "gravely doubtful" whether such correspondence referred to an existing contract; hence, the statute of frauds rendered the alleged contract unenforceable).

Both Conaway and the Superior Court majority relied on our decision in *Harry Rubin & Sons, Inc. v. Consolidated Pipe Co.*, 396 Pa. 506, 153 A.2d 472 (1959), in urging and finding an enforceable contract. Specifically, reliance is placed on the following language dealing with the UCC statute of frauds as set forth at 12A P.S. § 2–201: "All that is required is that the writing afford a basis for believing that the offered oral evidence rests on a real transaction." We believe that such reliance on this language is misplaced.

The clear statutory language requires that the writing indicate that a contract for sale "has been made." UCC, 12A P.S. §§ 2–201 and 8–319. The language set forth in *Harry Rubin & Sons, Inc. v. Consolidated Pipe Co.*, supra, was taken from UCC Comment 1 which provides in pertinent part as follows:

"1. The required writing need not contain all the material terms of the contract and such material terms as are stated need not be precisely stated. All that is required is that the writing afford a basis for believing that the offered oral evidence rests on a real transaction."

This Comment was apparently included to explain the purpose of the changes in the UCC from the restrictive requirements of prior law which required all essential terms of the contract to be memorialized in the writings introduced to satisfy the statute of frauds. See *Brister & Koester Lumber Corp. v. American Lumber Corp.*, supra; *Manufacturers Light & Heat Co. v. Lamp*, 269 Pa. 517, 112 A. 679 (1921). However, this Comment in no way evidences an intention to contradict the express statutory requirement that the writings indicate that a contract for sale "has been made." [8] Indeed, our opinion in *Harry Rubin & Sons, Inc. v. Consolidated Pipe Co.*, supra, 396 Pa. at 511, 153 A.2d at 475, recognized that one writing in that case referred to one purchase contract or order in question as an "accomplished fact, not as an offer depending upon acceptance for its validity." Moreover, another writing indicated that Consolidated Pipe Company "agreed" to ship its entire production of the material contracted for. Hence, the writings in *Harry Rubin & Sons, Inc. v. Consolidated Pipe Co.*, supra, evidenced that contracts "ha[d] been made" as required by the statute of frauds.

All of the other cases relied upon by Conaway also indicate that the writings introduced therein to satisfy the statute of frauds evidenced that contracts were, in fact, made. *Jinright v. Russell*, 123 Ga.App. 706, 182 S.E.2d 328

8. Any such contradiction, of course, is contrary to settled rules of statutory construction. See 1 Pa.C.S.A. § 1939 (Supp.1980–81).

(Ct.App.1971) (check signed by party to be charged which included notation: "For Binder on Store"); *Addiego v. Hill,* 268 Cal.App.2d 280, 73 Cal.Rptr. 901 (Ct.App.1968) (memoranda considered together indicated an offer, an acceptance, and specific terms); *Graulich Caterer, Inc. v. Hans Holterbosch, Inc.,* 101 N.J.Super. 61, 243 A.2d 253 (App.Div.1968) (signed writing indicated that contractual status existed between parties); *Cohn v. Fisher,* 118 N.J.Super. 286, 287 A.2d 222 (Law Div. 1972) (signed check for sale of boat included notation: "deposit on aux. sloop, D'Arc Wind, full amount $4,650."); *Tripp v. Pay'N Pak Stores, Inc.,* supra (corporation's minutes acknowledged existence of contract to sell securities); *Cooper v. Vitraco,* 320 F.Supp. 239 (D.V.I. 1970) (corporation's signed minutes indicated the terms for stock subscription and that the sale would be consummated upon receipt of value for subscription); *Fyre–Safety, Inc. v. Yerger Brothers, Inc.,* 56 Lanc.L.Rev. 311 (C.P.1958) (signed writing indicated defendant agreed to purchase fire protection equipment; *Julian C. Cohen Salvage Corp. v. Eastern Electric Sales Co.,* 34 Pa.D. & C.2d 705 (Phila.C.P.1964), *aff'd,* 205 Pa.Super. 26, 206 A.2d 331 (1965) (signed order form included terms of agreement and stated "Sold to Eastern Electric").

■ Conaway also claims that the statute of frauds was satisfied by virtue of the sworn affidavit given by the President of Century during the related federal litigation. Reliance is placed on UCC, 12A P.S. § 8–319(d), which provides that a contract for sale of securities is enforceable if:

"(d) the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that *a contract was made* for sale of a stated quantity of described securities at a defined or stated price." [Emphasis added.]

As noted above, the affidavit does not acknowledge any contract but merely refers to a "plan" or "proposal"; hence, the express requirement of the statute, i. e. that "a contract was made," has not been satisfied.

Accordingly, the order of the Superior Court is reversed, and the order of the Court of Common Pleas of Dauphin County is reinstated.