**Bernard KATZ**

v.

**Alfred ABRAMS and Helen Abrams.**

Civ. A. No. 79–1167.

United States District Court,
E.D. Pennsylvania.

Sept. 30, 1982.

Stephen J. Mathes, John F. Stoviak, Philadelphia, Pa., for plaintiff.

Norman H. Bradley, Philadelphia, Pa., for defendants.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

█ The plaintiff Bernard Katz ("Mr. Katz") seeks to recover damages, claiming that an alleged agreement between the plaintiff and the defendants, Alfred Abrams ("Mr. Abrams") and Helen Abrams, on March 11, 1979 was breached. The plaintiff also seeks specific performance of that agreement. Discovery having been completed, the defendants have filed a motion for summary judgment. The motion will be granted.

Fed.R.Civ.P. 56(c) provides in part:

[Summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

See *Hollinger v. Wagner Mining Equipment Co.,* 505 F.Supp. 894, 896–97 (E.D.Pa.1981). Therefore, in examining the propriety of a motion for summary judgment, the court must first determine whether there is a genuine issue as to any material fact. If there is a genuine issue as to any material fact, the motion for summary judgment will not be granted. *Ettinger v. Johnson,* 556 F.2d 692, 696 (3d Cir. 1977), *Fairbanks, Morse & Co. v. Consolidated Fisheries Co.,* 190 F.2d 817, 824 (3d Cir. 1951); *Mazzare v. Burroughs Corp.,* 473 F.Supp. 234, 237 (E.D. Pa.1979). In making this determination, the court will view the record in the light most favorable to the party opposing the motion. *Mazzare v. Burroughs Corp., supra; Wood v. Precise Vac-U-Tronic, Inc.,* 192 F.Supp. 619, 620 (E.D.Pa.1961). Although summary judgment is a drastic remedy and should be used sparingly, summary judgment will not be denied merely because the pleadings create the appearance of a dispute. *Transamerica Insurance Co. v. Long,* 318 F.Supp. 156, 158 (W.D.Pa.1970). *See Watson v. Southern Ry. Co.,* 420 F.Supp. 483, 485 (D.S.C.), *aff'd,* 542 F.2d 1170 (4th Cir. 1976). "It is not the office of the rule to preserve purely speculative issues of fact for trial."

█ The defendants base their motion for summary judgment on the statute of frauds. A statute of frauds defense does not go to the underlying merits of the dispute—if the defense fails, the plaintiff does not automatically win the case, but will be allowed to attempt to prove the contract and the breach. *See Harry Rubin & Sons, Inc. v. Consolidated Pipe Co.,* 396 Pa. 506, 153 A.2d 472 (1959). Therefore, this examination of the depositions, affidavits and the pleadings produced thus far is limited to only two questions. First, whether the statute of frauds provision of the Pennsylvania Commercial Code, 12A P.S. § 8–319, applies to this case and, second, if so, whether the plaintiff is able to satisfy its requirements.

With these points in mind, the undisputed facts considered in the light most favorable to the plaintiff are as follows. On March 8, 1979, Mr. Leonard Sobel ("Mr. Sobel"), Vice President of Crescent Lighting Corporation ("Crescent") telephoned Mr. Katz in Encino, California to determine whether he was interested in buying the stock of Crescent. Mr. Sobel was the authorized representative of Mr. Abrams, President of Crescent, for the purpose of soliciting Mr. Katz. The conversation culminated in a trip by Mr. Katz to Philadelphia to negotiate for the purchase of the stock. On March 10, 1979, Mr. Sobel met in Philadelphia with Mr. Katz at the home of Mr. Katz's brother, Mr. Alvin Katz, an independent sales representative of Crescent. The purpose of this meeting was to take Mr. Katz through an

inspection of the Crescent plant in Pennsauken, New Jersey to see if he was still interested in discussing the purchase of the Crescent stock with Mr. Abrams. In addition to the plant tour, Mr. Katz was shown various financial documents pertaining to the Crescent business. After some discussion, Mr. Katz stated that he was interested in buying the Crescent stock. Mr. Sobel relayed this information to Mr. Abrams who then joined the meeting.

During the remainder of the March 10 meeting, Mr. Katz and Mr. Abrams conducted serious negotiations concerning the sale. Discussed at length during these negotiations were: a $50,000 per year consulting fee for Mr. Abrams; an immediate capital infusion into Crescent by Mr. Katz; personal guarantees by Mr. Katz; and a payout program for Mr. Abrams based on achievement of certain profit levels. A second meeting was held on March 11, 1979 the purpose of which was to finalize the points that had been discussed at the previous meeting. Present at this meeting were Mr. Abrams, his attorney, Mr. Casnoff ("attorney"), his accountant, Mr. Simonson, and Mr. Sobel. The attorney took notes during this meeting. At the meeting, various terms were discussed and agreements were reached as to each term. The parties agreed to meet the next morning (March 12, 1979) at Philadelphia National Bank, Crescent's primary lender, to introduce Mr. Katz to the bank. However, at the March 12, 1979 meeting at the bank, contrary to Mr. Katz's understanding, the attorney told Mr. Katz, "we have no deal" (Casnoff deposition at p. 192) and Mr. Katz was never introduced to the bank personnel. On March 29, 1979, the plaintiff filed a complaint in this court demanding that the defendants perform their obligation under the alleged March 11, 1979 agreement by transferring one hundred percent of the outstanding stock of Crescent to Mr. Katz. Mr. Katz also claims damages in excess of $10,000.00.

Mr. Katz is a citizen of California; Mr. Abrams is a citizen of Pennsylvania; defendant Helen Abrams is a citizen of Florida. Jurisdiction is established pursuant to 28 U.S.C. § 1332.

■ In a diversity action, a federal district court must apply the choice of law rules of the forum state. *Klaxon Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). This being a diversity action, the court agrees with the parties that Pennsylvania law is applicable. *See Melville v. American Home Assurance Co.,* 584 F.2d 1306 (3d Cir.1978); *Jewelcor, Inc. v. St. Paul Fire & Marine Insurance Co.,* 499 F.Supp. 39 (M.D. Pa.1980); *Griffith v. United Air Lines, Inc.,* 416 Pa. 1, 203 A.2d 796 (1964).

Initially, on this motion for summary judgment, plaintiff contends that summary judgment cannot be granted because there is a disputed issue of fact as to whether the Pennsylvania Commercial Code's statute of frauds applies in the instant case. He contends that the stock of Crescent is not a "security" within the meaning of the Pennsylvania Code's definition since the stock is closely held. The Pennsylvania Code, 12A P.S. § 8–102, provides in pertinent part:

(a) A "security" is an instrument which

(i) is issued in bearer or registered form; and

(ii) is of a type commonly dealt in upon securities exchanges or markets or commonly recognized in any area in which it is issued or dealt in as a medium for investment; and

(iii) is either one of a class or series or by its terms is divisible into a class or series of instruments; and

(iv) evidences a share, participation or other interest in property or in an enterprise or evidences an obligation of the issuer.

\*       \*       \*       \*       \*       \*

(c) A security is in "registered form" when it specifies a person entitled to the security or to the rights it evidences and when its transfer may be registered upon books maintained for that purpose by or on behalf of an issuer or the security so states.

If the Crescent stock does not meet this definition, then the alleged sale is not sub-

ject to the Article 8 statute of frauds. On the issue of the applicability of the Pennsylvania statute to the sale of closely held stock, there appears to be no definitive ruling by the Pennsylvania Supreme Court. Where the highest court of Pennsylvania has not decided an issue, this court must predict the manner in which the court would decide the issue. *Mazzula v. Monarch Life Insurance Co.,* 487 F.Supp. 1299 (E.D.Pa.1980).

■ The plaintiff, Mr. Katz, relies chiefly on *Rhode Island Hospital v. Collins,* 117 R.I. 535, 368 A.2d 1225 (1977), in which the Rhode Island Supreme Court held that the stock of a corporation in which the defendant was the sole stockholder was not a "security" within the meaning of the Article 8 definition. The court relied on the fact that "a common thread running through all investment securities is the reasonable expectation that dividends will be derived from the profits which in turn are the results of the managerial or entrepreneurial efforts of others." *Id.* 368 A.2d at 1227. However, the better view is to the contrary. The Official Comment to § 8–102 of the Uniform Commercial Code, on which the Pennsylvania statute is modeled, states:

> Interests such as the stock of closely-held corporations, although they are not actually traded upon securities exchanges, are intended to be included within the definitions of both certified and uncertified securities by the inclusion of interests "of a type" commonly traded in these markets . . . .

Case law from other jurisdictions supports this interpretation. *See, e.g., Wamser v. Bamberger,* 101 Wis.2d 637, 305 N.W.2d 158 (1981) (contract for the sale of stock of small corporation, all of which registered in name of seller, involved a sale of "securities" within the meaning of section 8–319); *Gross v. Vogel,* 81 A.D.2d 576, 437 N.Y.S.2d 431 (1981) (shares of stock in a closed corporation are "securities" within the meaning of section 8–319) (citing *Pantel v. Becker,* 391 N.Y.S.2d 325, 89 Misc.2d 239 (Sup.Ct. 1977)). The remarks of the New York court in *Pantel, supra,* 391 N.Y.S.2d at 326 are relevant to this case. The *Pantel* court noted:

> It might be argued that securities exchanges or markets seldom, if ever, deal in the stock of any corporation which has fewer than four shareholders and whose only substantial asset is a structure housing but two professional offices. However, even the adoption of this strained construction of the statute would not exclude this [type of] stock from the statutory definition because such stock is certainly commonly recognized by many as a medium of investment.

This court concludes that stock of a closely held corporation may be "securities" within the meaning of § 8–102.

■ On this motion for summary judgment, the question remains whether undisputed evidence exists to bring the Crescent stock clearly within the definition of § 8–102. The certificates in question were issued in registered form indicating the person entitled to the security. They evidenced shares of capital stock of Crescent Lighting Corporation and bore on their face, "transferable only on the books of the Corporation . . . ." They are "of a type" commonly dealt in upon securities exchanges or markets and by the plaintiff's own testimony were intended as a medium of investment. (Katz deposition at p. 35). The Crescent stock thus meets the requirements of the definition of a security within the meaning of the Pennsylvania Commercial Code. As the comment to the Pennsylvania Code's statute of frauds explains: "[t]he definition of a 'security' is functional rather than formal, and it is believed will cover anything which securities markets . . . are likely to regard as suitable for trading." Furthermore, the recent decision of the Pennsylvania Supreme Court in *Conaway v. 20th Century Corp.,* 491 Pa. 189, 420 A.2d 405 (1980), has convinced this court that the Pennsylvania Supreme Court would consider the sale of stock in this case as coming within the definition of a security pursuant to 12A P.S. § 8–102. Accordingly, this court concludes that since, as the

evidence clearly indicates, there is no genuine issue of material fact as to the applicability of § 8–319, the plaintiff must satisfy the statute of frauds and summary judgment will not be denied on these grounds.

We must now determine whether the statute of frauds has been satisfied. The plaintiff alleged in his complaint, *inter alia,* that Alfred Abrams together with his mother, Helen Abrams, owns 100% of the stock of Crescent Lighting Corporation and that on March 11, 1979, within the Eastern District of Pennsylvania, plaintiff and defendants entered into an agreement by which plaintiff agreed to buy and defendants to sell one hundred percent of the outstanding stock of Crescent Lighting Corporation.

■ In an attempt to meet the writing requirement of 12A P.S. § 8–319(a), the plaintiff contends that the destruction of notes taken by Mr. Abrams' attorney at the March 11 meeting raises the presumption that the notes may have satisfied 12A P.S. § 8–319(a). Section 8–319(a) provides:

> A contract for the sale of securities is not enforceable by way of action or defense unless
>
> (a) there is some writing signed by the party · against whom enforcement is sought or by his authorized agent or broker sufficient to indicate that a contract has been made for sale of a stated quantity of described securities at a defined or stated price
>
> . . . .

The plaintiff contends that an issue of fact exists as to whether these notes constituted the agreement between the parties. We need not dwell on this issue long. The plaintiff's complaint does not allege that there was any *written* agreement to sell any or all of the stock of Crescent. Furthermore, the plaintiff has admitted that he knows of no writing. (Katz deposition at p. 64). There is a fundamental difference between presuming that the notes ·which were destroyed would be unfavorable to the defendants' case, and presuming that they contained all the legally operative elements necessary for a writing sufficient to satisfy the statute of frauds. Lawyers frequently take notes during a negotiation; however, under the undisputed facts in this case there is nothing to show that the attorney's notes were intended to be used as a contract for the sale of the Crescent stock. The plaintiff does not contend that the notes were signed by the party against whom enforcement is sought or that they were sufficient to indicate that a contract had been made for the sale of securities at a stated quantity or price. *See* 12A P.S. § 8–319(a). Hence, there is no disputed issue of fact concerning this matter.

■ The plaintiff next has made an argument under 12A P.S. § 8–319(d), commonly known as the admissions exception, which should be addressed. Section 8–319(d) provides:

> A contract for the sale of securities is not enforceable by way of action or defense unless
>
> *   *   *   *   *   *
>
> (d) the party against whom enforcement is sought admits in his pleadings, testimony or otherwise in court that a contract was made for sale of a stated quantity of described securities at a defined or stated price.

This court rejects the plaintiff's contention that summary judgment should not be granted on the hypothesis that during any trial of this case Mr. Abrams may at some time make an admission that there was a contract for the sale of all of the stock of Crescent at a stated price. The plaintiff has had ample opportunity to conduct discovery and has taken depositions and there has been no such admission.

■ In addition, the plaintiff contends that since Mr. Sobel in his deposition has stated that at the end of the meeting Mr. Katz said, "[w]e have a deal," and everybody stood up and shook hands, he has indirectly admitted the existence of the contract. (Sobel deposition at p. 22). Clearly, Mr. Sobel did not admit anything on behalf of the plaintiff. Furthermore, it is the meeting of the minds of the parties that is relevant in contracting. The subjective impressions of third persons are immaterial.

See Corbin on Contracts, § 107 at 157 (1952). Additionally, it should be noted that Mr. Sobel's admission under plaintiff's theory would have to qualify as an admission on agency principles. This attempt is thwarted by the fact that Mr. Sobel was no longer in the employ of the defendant when the alleged "admission" was made. The admissions exception has clearly not been satisfied. No issue of fact exists.

For the purposes of this motion, we need not consider § 8–319(b) or (c) of the Pennsylvania statute of frauds since the plaintiff has not raised any issue of material fact under these subsections. For all the foregoing reasons, this court finds it appropriate to grant summary judgment. Accordingly, an appropriate order will be entered.