499 A.2d 302

**Thomas A. JENNISON, Appellant,**

v.

**Joseph JENNISON, Appellee.**

Superior Court of Pennsylvania.

Argued March 13, 1985.

Filed Aug. 9, 1985.

Reargument Denied Oct. 15, 1985.

48

William S. Scott, Pittsburgh, for appellant.

James C. Larrimer, Pittsburgh, for appellee.

Before BECK, POPOVICH and HANDLER *, JJ.

BECK, Judge:

This is an action in equity for specific performance of a stock purchase agreement. The Chancellor ruled that the contract could not be specifically enforced because the parties had not agreed on the price of the stock and the court could not supply the missing term. We affirm.

Plaintiff-appellant is the president and chief executive officer of South Pitt Tool Co., Inc. ("South Pitt"), a closely held corporation in Allegheny County. Defendant-appellee is the founder of the company who has essentially been retired since 1976. Appellant initially went to work for South Pitt in the spring of 1972, his original position being vice-president. At that time appellee transferred fifty shares of stock to appellant as an inducement to join the

* Honorable Earl R. Handler, Senior Judge, of the Court of Common Pleas of Indiana County, is sitting by designation.

company. At the same time appellant was made a director of the corporation. Over a period of time additional stock was transferred to appellant, but appellee remained the majority shareholder.

On August 31, 1976, appellant and South Pitt entered into an employment agreement and appellant and appellee entered into a stock purchase agreement. The agreements were intended to be vehicles by which appellant would acquire both management responsibility and voting control of South Pitt. In paragraphs 1 and 2 of the stock purchase agreement (sometimes hereinafter referred to as "the 1976 agreement"), appellee agreed to sell and assign to appellant a portion of the stock totalling 100 shares for a stated consideration of $175 per share. This was to occur in two transactions, one in 1976 and the next in 1977. In paragraph 3, appellee agreed to sell 300 shares on or about March 1, 1982 "for a purchase price to be then negotiated and agreed upon by Buyer and Seller." Under paragraph 4, the installment payment of the purchase price for the 300 shares was to be secured by a collateral agreement, the terms of which also were left open.

Appellant made the payments contemplated by paragraphs 1 and 2 of the agreement and those transfers were completed. When the time came for transfer of the remaining 300 shares, appellee expressed a willingness to transfer the stock, reserving, however, voting rights for a substantial period of time. Negotiations to set the purchase price and other conditions of the sale broke down and the instant action followed.

Appellant's first contention is that the Chancellor erred in holding that the Statute of Frauds provision of the Uniform Commercial Code for the sales of securities, 13 Pa.C.S. § 8319, applied to the transaction at issue. Section 8319(1) states that a contract for the sale of securities is not enforceable unless "there is some writing ... sufficient to indicate that a contract has been made for sale of a stated quantity of securities at a defined or stated price." "Security" is defined in 13 Pa.C.S. § 8102 as follows:

(1) A "security" is an instrument which:

 (i) is issued in bearer or registered form;

 (ii) is of a type commonly dealt in upon securities exchanges or markets or commonly recognized in any area in which it is issued or dealt in as a medium for investment;

 (iii) is either one of a class or series or by its terms is divisible into a class or series of instruments; and

 (iv) evidences a share, participation or other interest in property or in an enterprise or evidences an obligation of the issuer.

Appellant argues that shares of stock in a closely held corporation which are endorsed with transfer restrictions are not "securities" for the purpose of 13 Pa.C.S. § 8319 because such shares are not easily marketable and are therefore not "of a type commonly dealt in upon securities exchanges or markets."

This precise question is one of first impression in the courts of this Commonwealth. In *Pirilla v. Bonucci*, 320 Pa.Super. 496, 467 A.2d 821 (1983), this Court did apply section 8319 to an agreement for sale of stock in a closely-held corporation, but it appears that the parties and the court in that case focused on whether the requirements of the statute were met and did not raise or consider the question whether it was proper to impose the requirements of section 8319 in the first instance.

One federal court has addressed the issue in the context of a diversity action in which Pennsylvania law applied. In *Katz v. Abrams*, 549 F.Supp. 668 (E.D.Pa.1982), the district court recognized that there was no definitive ruling by the Pennsylvania Supreme Court on the issue, and predicted that Pennsylvania would hold that stock in a closely held corporation can be subject to the statute of frauds contained in section 8319. The district court relied on decisions in Wisconsin and New York holding that shares in a closely held corporation were "securities" as defined in section

8102, with the result that the Article 8 [1] statute of frauds (section 8319) applied. *See Pantel v. Becker,* 89 Misc.2d 239, 391 N.Y.S.2d 325 (Sup.Ct.1977); *Wamser v. Bamberger,* 101 Wis.2d 637, 305 N.W.2d 158 (1981). The district court quoted with approval the following language from *Pantel:*

It might be argued that securities exchanges or markets seldom, if ever, deal in the stock of any corporation which has fewer than four shareholders and whose only substantial asset is a structure housing but two professional offices. . However, even the adoption of this strained construction of the statute would not exclude this [type of] stock from the statutory definition because such stock is certainly commonly recognized by many as a medium of investment.

*Katz v. Abrams,* 549 F.Supp. at 671, *quoting Pantel,* 89 Misc.2d at 240, 391 N.Y.S.2d at 326.

Three jurisdictions have held that shares in closely held corporations are not "securities" for Article 8 purposes, all for reasons similar to those argued by appellant. *See Zamore v. Whitten,* 395 A.2d 435 (Me.1978); *Rhode Island Hospital v. Collins,* 117 R.I. 535, 368 A.2d 1225 (1977); *Blasingame v. American Materials Inc.,* 654 S.W.2d 659 (Tenn.1983).[2] In *Blasingame* the court observed that the shares in question were subject to transfer restrictions.

■ We agree with the district court in *Katz* that the better view is that shares of stock in closely held corporations should be treated as "securities" under Article 8 of the Uniform Commercial Code. The holdings of *Katz* and *Pantel* constitute a more sensible interpretation of the

1. In the Pennsylvania Uniform Commercial Code the word "Division" is substituted for "Article." We use "Article" in this opinion to avoid confusion, because the statutes of most other jurisdictions, as well as the Comments, use the term "Article."

2. Appellant cites in support of this proposition *Kenney v. Porter,* 557 S.W.2d 589 (Tex.Civ.App.1977). However, in *Kenney* the court did not ultimately decide whether the stock in question was a "security" under Article 8; rather, it held that this was a factual issue which would not be decided on the summary judgment motion before the court.

statutory language. Shares of stock in a closely held corporation are, after all, shares of stock, which are clearly instruments "of a type" commonly dealt in on securities exchanges or markets. They also fall within the commonly recognized meaning of an "investment:" "An expenditure to acquire property or other assets in order to produce revenue; the asset so acquired. The placing of capital or laying out of money in a way intended to secure income or profit from its employment." *Black's Law Dictionary* 5th ed. (1979). The fact that a corporation may be closely held or the shares bear a transfer restriction may affect the ease and frequency with which the stock is traded or the desirability of the stock as an investment but it does not make it something other than a "security."

We believe that the drafters of the UCC recognized this, because Article 8 contains a provision relating to enforceability of transfer restrictions. Section 8–204, enacted in Pennsylvania as 13 Pa.C.S. § 8204, provides (emphasis added):

Unless noted conspicuously *on the security* a restriction on transfer imposed by the issuer even though otherwise lawful is ineffective except against a person with actual knowledge of it.

The language of section 8204 clearly implies that shares bearing transfer restrictions are still "securities" as that term is defined in section 8201. The Comments to section 8204 include a cross-reference to the definition of "security" in section 8201 and a statement that section 8204 is intended to encompass the customary transfer restrictions imposed on stock in closely-held corporations. If the drafters of the UCC did not intend restricted shares of closely held corporations to be covered by Article 8, section 8204 either is surplusage or it is misplaced. Both interpretations are untenable.

We hold that the Chancellor correctly imposed the requirement of section 8319 that the agreement be in writing. We must therefore decide whether the writing at issue is sufficient under section 8319(1) to state an enforceable

contract. The Chancellor found as a fact that the parties had failed to agree on the price of the 300 shares ·and consequently denied specific performance because the contract was too indefinite to enforce.

The factual findings of the Chancellor are entitled to the weight of a jury verdict and will not be upset by an appellate court if supported by adequate evidence. *Rusiski v. Pribonic*, 326 Pa.Super. 545, 474 A.2d 624 (1984).

 The record supports the finding that the parties failed to reach agreement on the open terms contained in the 1976 stock purchase agreement, most importantly the price term. Appellant argues that we must read the 1976 agreement in tandem with a January 4, 1975 agreement between South Pitt and all its shareholders. This instrument was a general-purpose agreement of the type commonly known as a "buy-sell agreement;" it imposed restrictions on inter vivos transfers of shares such as majority consent, first refusal rights in the corporation, and the like, and it set forth a procedure for the purchase of the shares of a deceased shareholder.[3]

Additionally, the agreement set the price per share for any transfers of stock at $175, subject to revision by a majority vote at an annual or special meeting of shareholders. Appellant argues that the 1975 agreement established a mechanism for determining the price of a share of South Pitt stock, with the result that the price of the 300 shares at issue here should be $175 per share because the shareholders had not changed the set price.

 It is true that several interrelated writings may be used to satisfy the requirements of 13 Pa.C.S. § 8319(1). *Conaway v. 20th Century Corp.*, 491 Pa. 189, 420 A.2d 405 (1980). However, the 1975 buy-sell agreement cannot be read into the 1976 stock purchase agreement to supply the missing price term. Contracts must be construed in a way

---

**3.** These are the transfer restrictions discussed above with relation to the Statute of Frauds issue. An endorsement on the face of the stock certificates refers to the 1975 agreement.

which gives meaning and effect to all their terms. *Atlantic Richfield Co. v. Razumic,* 480 Pa. 366, 390 A.2d 736 (1978); *Woytek v. Benjamin Coal Co.,* 300 Pa.Super. 397, 446 A.2d 914 (1982); *Friestad v. Travelers Indemnity Co.,* 260 Pa. Super. 178, 393 A.2d 1212 (1978). The inclusion in the 1976 agreement of paragraph 3, providing that the price for the 300 shares was to be agreed on by the parties, indicates that the parties intended the 1976 agreement to supersede the 1975 buy-sell agreement. Paragraph 3 would be meaningless and superfluous if the parties intended for the price to be determined according to the 1975 buy-sell agreement. If the parties had intended for the price to be set under the prior agreement they could easily have said so.

Appellant presented neither any other evidence from which the court could conclude that the parties had agreed on a price nor any evidence from which the court could supply the missing terms on a "reasonably certain basis," *see Bethlehem Steel Corp. v. Litton Industries, Inc.,* 507 Pa. 88, 100, 488 A.2d 581, 591 (1985) (Opinion of Flaherty, J., in Support of Affirmance) (affirming by equally divided court an order refusing to enforce an option agreement for construction and sale of ships with open terms including price). The contract provided that the parties were to agree on a price; their negotiations broke down without their reaching an agreement. The evidence fails to meet the requirement of 13 Pa.C.S. § 8319(1) that the writing indicate that "a contract has been made ... at a defined or stated price." All we have is an "agreement to agree" which is incapable of enforcement. *Onyx Oils & Resins Inc. v. Moss,* 367 Pa. 416, 80 A.2d 815 (1951); *see also Field v. Golden Triangle Publishing Inc.,* 451 Pa. 410, 305 A.2d 689 (1973) (specific performance will not be granted unless the terms of the agreement are complete and certain).[4] The Chancellor was correct in refusing specific performance.

Order affirmed.

---

4. Appellant also argues that he is entitled to relief by virtue of the doctrine of promissory estoppel. The difficulty with this argument is,

of course, that whatever "promises" appellant relied upon are in any event too indefinite to enforce.