Vernon R. BECK, Respondent,

v.

AMERICAN SHARECOM, INC., Defendant and Third-Party Plaintiff, Appellant,

v.

Harry A. JOHNSON, Jr., Third-Party Defendant, Respondent.

No. C6–93–1590.

Court of Appeals of Minnesota.

April 5, 1994.

Review Denied June 29, 1994.

James A. Gallagher, Steven E. Rau, Maun & Simon, St. Paul, for appellant.

Joseph W. Anthony, Leny K. Wallen–Friedman, Fruth & Anthony, P.A., Minneapolis, for Vernon R. Beck.

Michael L. Meyer, Ravida, Meyer & Kirkman, P.A., Minneapolis, for Harry A. Johnson, Jr.

Considered and decided by SHORT, P.J., and KLAPHAKE and DAVIES, JJ.

## OPINION

SHORT, Judge.

American Sharecom, Inc. redeemed 725,-000 shares of its common stock registered to Harry A. Johnson, Jr. Claiming a legal right to 50,000 shares of Johnson's stock, Vernon R. Beck sued Sharecom for conversion, wrongful transfer, and tortious interference with contractual rights. At trial, the jury returned a special verdict in Beck's favor. Sharecom's posttrial motions were denied, and the trial court awarded Beck $300,000 in damages plus prejudgment interest. On appeal, Sharecom argues there was no fact question for the jury to decide and it is entitled to judgment notwithstanding the verdict (JNOV) because (1) confirmation of Johnson's bankruptcy plan precludes Beck's claims against Sharecom, (2) Beck did not possess an ownership interest in Johnson's stock, (3) redemption of Johnson's stock did not violate Article 8 or constitute tortious interference with Beck's contractual rights, (4) the special verdict form erroneously presumed Beck owned the stock at issue, and (5) the damage award is without record support. We reverse.

## FACTS

In 1986, Beck entered into an employment contract with Johnson's management company. The contract provided for Beck to manage Johnson's investments, secure additional financing for Sharecom, and serve as Johnson's designee on Sharecom's board of directors. In return, Beck was to receive monthly compensation and 50,000 shares of Sharecom stock when Sharecom went public or upon termination of the parties' agreement. That contract was terminated in March of 1987.

Beck sued Johnson and his management company for monetary damages incurred by breach of the parties' contract. He did not seek specific performance or a restraining order regarding his claimed right to 50,000 shares of Sharecom stock. On April 10, 1987, Beck sent a letter to the president of Sharecom enclosing a copy of his complaint and the employment contract. The letter stated, "I am willing to cooperate with you in any way you feel is in the best interests in [sic] American Sharecom." In a second letter to Sharecom's president dated September 27, 1988, Beck congratulated the company on an "excellent fiscal year," inquired about additional compensation for his service on the board of directors, and stated:

As you know, I presently hold options as a result of my activity on the American Sharecom Board of Directors. In addition, Harry Johnson has agreed in writing, to grant me 50,000 shares of stock. Although this matter is presently being contested, we expect to be through the trial and have a final determination in this dispute by February of 1989.

Beck did not request that Sharecom take or refrain from taking any action based on his letters, complaint, or employment contract with Johnson.

Johnson was a major shareholder of Sharecom. As of December 1988, Johnson was the registered owner of 725,000 shares of Sharecom stock and held options for 312,500 additional shares. Johnson did not endorse, tender, or transfer any of those shares to anyone else. In December 1988, Sharecom redeemed Johnson's stock at $3.00 per share. Sharecom did not reissue the stock. Sharecom extended that redemption offer to all other shareholders and option holders. Beck, who held options for 11,322 shares, tendered his options and also received $3.00 per share.

On April 21, 1989, Johnson and his management company filed for reorganization under Chapter 11 of the Bankruptcy Act. The bankruptcy proceeding stayed Beck's state court litigation. As part of the bankruptcy proceeding, Beck filed a proof of claims totaling $2,500,000 based in part on Johnson's failure to provide him with 50,000 shares of Sharecom stock. During the bankruptcy proceedings, Beck discovered Sharecom had redeemed Johnson's stock. In November 1990, Beck wrote a letter to Sharecom characterizing Johnson's sale of stock to Sharecom as fraudulent.

In March 1991, the bankruptcy court confirmed Johnson's bankruptcy plan. Beck's claims were classified as general, unsecured claims of $775,627. In April 1991, with the bankruptcy court's approval, Sharecom purchased Johnson's outstanding stock options. That money partially funded Johnson's reorganization. A few months later, Beck and Johnson settled all claims pending in the adversary proceedings. The parties' stipulation, approved by the bankruptcy court, did not release any of Beck's claims against Sharecom. After settling with Johnson, Beck filed this lawsuit against Sharecom.

## ISSUES

I. Do principles of res judicata preclude Beck's claims against Sharecom based on the employment contract?

II. Did the employment contract give Beck an ownership interest in any of Johnson's Sharecom stock?

III. Does Article 8 impose a duty on Sharecom to deal with Beck?

IV. Did Sharecom's redemption prevent Johnson's performance under the employment contract?

## ANALYSIS

■■■ A motion for a directed verdict presents a question of law on whether the evidence is sufficient to create a fact issue for the jury to decide. Minn.R.Civ.P. 50.01; *see Citizen's Nat'l Bank v. Taylor*, 368 N.W.2d 913, 917 (Minn.1985) (a directed verdict is appropriate only when a contrary verdict would be clearly against the evidence or law). A directed verdict is appropriate only in the clearest of cases where but one conclusion can be drawn from the facts, and the question for determination becomes a question of law for the court. *See Advanced Training Sys. v. Caswell Equip. Co.*, 352 N.W.2d 1, 11–12 (Minn.1984) (a motion for a directed verdict should be granted only when the verdict does not comply with law or is manifestly contrary to the evidence). Sharecom argues the trial court erred in failing to grant its motion for directed verdict, or in the alternative, its motion for judgment notwithstanding the verdict.

■■■ On appeal from an order denying a motion for JNOV, we must determine whether there is any competent evidence tending to sustain the verdict. *Rettman v. City of Litchfield*, 354 N.W.2d 426, 429 (Minn.1984). We review the evidence in the light most favorable to the prevailing party. *B.F. Goodrich Co. v. Mesabi Tire*, 430 N.W.2d 180, 182 (Minn.1988). Unless we determine the evidence is practically conclusive against the verdict, or reasonable minds could reach only a conclusion against the verdict, the trial court's denial of the motion for JNOV should stand. *Waite v. American Family Mut. Ins.*, 352 N.W.2d 19, 21 (Minn.1984); *Covey v. Detroit Lakes Printing*, 490 N.W.2d 138, 141 (Minn.App.1992).

## I.

The doctrine of res judicata, or claim preclusion, is designed to prevent the relitigation of causes of action already determined in a prior action. *Beutz v. A.O. Smith Harvestore Prods.,* 431 N.W.2d 528, 531 (Minn.1988). Litigation of a claim may be barred under the following rule:

> A judgment on the merits constitutes an absolute bar to a second suit for the same cause of action, and is conclusive between parties and privities, not only as to every matter which was actually litigated, but also as to every matter which might have been litigated, therein.

*Id.* (quoting *Youngstown Mines Corp. v. Prout,* 266 Minn. 450, 466, 124 N.W.2d 328, 340 (1963)). There are three components of res judicata: (1) a final judgment on the merits, (2) a second suit involving the same cause of action, and (3) identical parties or parties in privity. *Minneapolis Auto Parts Co. v. City of Minneapolis,* 739 F.2d 408, 409 (8th Cir.1984).

Sharecom argues the confirmation of Johnson's bankruptcy plan precludes any claims by Beck based on the employment contract. *See* 11 U.S.C. § 1141(a)-(c) (1988) (confirmation plan decree is the final discharge of all claims); 5 Collier on Bankruptcy ¶ 1141.01[1] (Lawrence P. King ed., 15th ed. 1993) (all claims which could have been raised pertaining to confirmation plan are barred by res judicata). We disagree. The third element of the test cannot be satisfied because the parties in both actions were not identical or in privity. Beck first sued Johnson and his management company in the adversary proceeding, and this second lawsuit by Beck is against Sharecom. Principles of res judicata bar only Beck's claims against Johnson and his management company under the employment contract. The bankruptcy court's decision to remand Beck's claims against Sharecom to state court, but not those against Johnson, is consistent with this analysis.

## II.

A claim for conversion must show the injured party's right to use, possess, or own the contested property. *Security Sav. Bank v. Green Tree Acceptance,* 739 F.Supp. 1342, 1350 (D.Minn.1990); *Dain Bosworth Inc. v. Goetze,* 374 N.W.2d 467, 471 (Minn. App.1985). We are asked to decide whether Beck obtained an ownership interest in Johnson's securities by virtue of his employment contract with Johnson. That contract provided that Beck "shall be granted 50,000 shares" and the shares "shall be tendered at such time as the company goes public or termination of this agreement."

Article 8 of the Uniform Commercial Code governs procedures for negotiation and transfer of investment securities. *See* Minn. Stat. § 336.8–101–.8–408 (1988). Section 336.8–313 provides in relevant part:

> (1) Transfer of a security or a limited interest (including a security interest) therein to a purchaser occurs only:
>
> > (a) at the time the purchaser or a person designated by the purchaser acquires possession of a certificated security;
>
> \* \* \* \* \* \*
>
> > (e) with respect to an identified certificated security to be delivered while still in the possession of a third person, not a financial intermediary, at the time that person acknowledges holding for the purchaser.
>
> \* \* \* \* \* \*

*Id.* § 336.8–313(1)(a), (e). The methods of transfer listed in the statute are exclusive and compliance with one of them is essential to a valid transfer. U.C.C. § 8–313 cmt. 1, 2C U.L.A. 405 (1991). To effectuate a valid transfer of securities, there must be delivery or its legal equivalent, with intent to change ownership. Minn.Stat. § 336.8–313(1); *see United States v. Doyle,* 486 F.Supp. 1214, 1219 (D.Minn.1980) ("Actual transfer of physical possession is a prerequisite to delivery."); *Brener v. Industrial Steel Container Co.,* 303 Minn. 275, 280, 228 N.W.2d 115, 118 (1975) ("[T]ransfer is delivery with intent to change ownership."); Steven O. Weise, *U.C.C. Article 9—Personal Property Secured Transactions,* 46 Bus.Law. 1711, 1722 (1991) (transfer occurs by physical delivery, notification to a financial intermediary, or notations in records of financial intermediary).

It is undisputed that *(a)* Beck was not given possession of any of Johnson's shares, *(b)* there was no transfer or delivery of shares to Beck from Johnson, *(c)* in the employment contract, Johnson did not promise any identified certificated shares to Beck, and *(d)* Johnson did not sign a written security agreement relating to the Sharecom stock. *See* Minn.Stat. §§ 336.8–321(1), 336.9–203(1) (1988) (interest in security enforceable only if it is physically transferred or evinced by a security agreement). Johnson could have performed under the contract by exercising his options to purchase Sharecom shares; Beck thus had no ownership right in the particular Sharecom shares Johnson happened to hold when the parties' contract was terminated.

Beck himself apparently believed he was entitled only to the monetary equivalent of 50,000 shares, rather than to any particular shares of stock. He did not seek specific performance in his case against Johnson. Nor did he move the trial court for a restraining order or injunctive relief to prevent Johnson from selling or transferring the stock. *See id.* § 336.8–403(2) (adverse claimant may request an injunction or restraining order to preserve interest). At no time did Beck ask Sharecom to register, transfer, or place a legend on the stock in Johnson's possession. Beck's election of remedies in both lawsuits supports our conclusion that his employment contract did not give to him ownership rights to any specific shares of Sharecom stock. Under these circumstances, there was no fact question for the jury to decide and the trial court erred by denying a directed verdict on Beck's conversion claim.

### III.

■ Article 8 covers a broad spectrum of negotiable investment paper, but deals with only certain transactions involving such paper. Minn.Stat.Ann. § 336.8–101, Minn.Code cmt. at 23 (West 1966). To maintain an action for wrongful transfer, a plaintiff must establish *(a)* a transfer of security, *(b)* made to someone other than a good faith purchaser, *(c)* which was wrongful and caused damage to the plaintiff. Minn.Stat. § 336.8–315.

Sharecom argues its redemption of stock was not a wrongful transfer. We agree. Johnson was the registered owner of the stock. *See* Minn.Stat. § 302A.417, subd. 6 (1988) (signed certificate is prima facie evidence of ownership). Beck was neither the beneficial owner nor the holder-of-record. *See id.* § 302A.471, subd. 2(b) (1988) (registered shareholder may hold shares that are beneficially owned by other persons). Sharecom is protected by statute from liability for honoring the registered owner's instructions. *See id.* § 336.8–207(1) (prior to due presentment for registration of transfer of a certificated security in registered form, the issuer may treat the registered owner as the owner of the security); *id.* § 336.8–401(1) (issuer under duty to register transfer of security upon presentment of certain evidence of transfer); *Kerrigan v. American Orthodontics,* 960 F.2d 43, 46 (7th Cir.1992) (issuer may treat registered owners as the real owners).

While Sharecom had notice of the dispute between Beck and Johnson, Johnson presented his shares for redemption and Beck did not ask Sharecom to do or refrain from doing anything. Mere notice of a dispute is not enough to impose on the issuer a duty of dealing with the person claiming an interest. Minn.Stat.Ann. § 336.8–207, U.C.C. cmt. 1 (West 1966); *Kerrigan,* 960 F.2d at 46. Such a requirement would be inconsistent with the negotiable nature of stock. Because there was no wrongful conduct by Sharecom, the redemption of Johnson's stock cannot, as a matter of law, give rise to an Article 8 wrongful transfer claim. The trial court erred by denying a directed verdict for Sharecom on Beck's Article 8 claim.

### IV.

■ To prove tortious interference of contract, a plaintiff must show *(a)* the existence of a contract, *(b)* defendant's knowledge of that contract, *(c)* intentional and improper interference, and *(d)* damage as a result of the unjustified conduct. *Major Computer v. Academy Life Ins. Co.,* 929 F.2d 1249, 1250 (8th Cir.1991); *Furlev Sales &*

*Assocs. v. North Am. Automotive Warehouse,* 325 N.W.2d 20, 25 (Minn.1982); *see* Restatement (Second) of Torts § 766 (1979) (defendant liable for intentionally inducing third party not to perform contract). At trial, Beck claimed that Sharecom's redemption of stock prevented Johnson from performing under the employment contract. The jury agreed and found that Sharecom tortiously interfered with the employment contract between Beck and Johnson.

Sharecom argues there can be no tortious interference as a matter of law because of the negotiable nature of stock. The record demonstrates *(a)* Johnson's name was on the face of the stock certificates and he was the registered owner; *(b)* none of the certificates contained any endorsement to Beck; *(c)* Johnson did not ask Sharecom to transfer the stock to Beck; *(d)* in December 1988, Johnson received over $2,000,000 in cash for the redemption of his stock and also possessed exercisable options to 312,500 additional shares; *(e)* Beck admitted Johnson was still capable of performing under the employment contract after the redemption; *(f)* Beck conceded that the bankruptcy proceeding, not the redemption, restricted Johnson's ability to perform his contract obligations; *(g)* redemption of Johnson's shares was in the best interests of Sharecom; *(h)* Sharecom extended the redemption offer to other shareholders; and *(i)* Sharecom redeemed Johnson's shares after consulting with its attorneys. Under these facts, Johnson could have performed by later buying Sharecom shares and delivering them to Beck. Thus, the act of redemption did not alter Johnson's ability to perform his alleged contract obligations and Sharecom did not tortiously interfere with Beck's contract rights as a matter of law.

We need not reach Sharecom's remaining arguments regarding the fundamental error in the form of the special verdict or the lack of evidence to support the damage award because of our disposition of the previous issues. Only one conclusion can be drawn from the undisputed facts—Sharecom's redemption of stock from the registered owner does not legally constitute conversion, wrongful transfer, or tortious interference with Beck's contract claim to negotiable securities identified by issuer. Given the evidence, the trial court erred by denying Sharecom's motions for directed verdict and judgment notwithstanding the verdict.

### DECISION

Confirmation of Johnson's bankruptcy plan does not preclude Beck's claims against Sharecom relating to the employment contract. Beck's claim to stock does not establish ownership rights sufficient to sustain a claim for conversion against Sharecom. Redemption of stock from a registered owner does not give rise to a wrongful transfer claim. Because of the negotiable nature of stock, Sharecom's redemption of Johnson's stock did not interfere with Beck's contract rights.

**Reversed.**