**In re Fred H. BAME, Debtor.**

**James E. Ramette, Trustee, Plaintiff,**

**v.**

**Al & Alma's Supper Club Corp., Merritt Geyen, and Sidney Kaplan as Trustee of the Fred H. Bame Grantor Retained Income Trust, Defendants.**

**Bankruptcy No. 99–40683.**
**Adversary No. 00–4011.**

United States Bankruptcy Court,
D. Minnesota.

Aug. 22, 2000.

*FINDINGS OF UNDISPUTED FACT AND CONCLUSIONS OF LAW ON CROSS–MOTIONS FOR SUMMARY JUDGMENT*

NANCY C. DREHER, Bankruptcy Judge.

The above entitled matter came on for hearing on June 9, 2000, and July 17, 2000, on cross-motions for summary judgment. Randall Seaver appeared on behalf of the Plaintiff, Trustee James Ramette ("Trustee"). Peter Johnson appeared on behalf of the Defendants Merritt Geyen and Al &

Alma's Supper Club Corp. David Orenstein and William Fisher appeared on behalf of Defendant Sidney Kaplan. Based upon the files and records of the proceeding, the affidavits, and the arguments of counsel, the court makes the following:

## FINDINGS OF UNDISPUTED FACT

1. This adversary proceeding centers around a dispute as to the ownership of certain stock certificates in Al & Alma's Supper Club Corp. ("Al & Alma's"). Al & Alma's was founded in September of 1983 with authorized capital stock of 1,000 shares. At the formation of the company, 100 shares of stock were issued. Debtor Fred Bame ("Debtor") received 50 of those 100 shares, which were represented by Certificate No. 1. The Debtor's daughter, Defendant Merritt Geyen ("Geyen"), was issued 25 shares. Geyen's husband Darryl Geyen received the remaining 25 shares. Al & Alma's was a private, family owned business, which operated a dinner cruise and restaurant facility in Mound, Minnesota. Darryl and Merritt Geyen ran the day to day affairs of the business.

2. In March of 1989, one of the Debtor's business entities, Gopher Oil Co., entered into a loan agreement with Diversified Business Credit, Inc. ("DBCI"). The Debtor personally guaranteed the loan, and as security therefor, he delivered Certificate No. 1 in Al & Alma's to DBCI.

3. On October 10, 1989, the Debtor established the Bame Grantor Retained Income Trust ("GRIT"). The GRIT was established as a tax-favorable means of transferring the Debtor's stock in Al & Alma's as a gift to Geyen. Essentially, the Debtor was to transfer his interest in Al & Alma's, represented by Certificate No. 1, to the trust for the benefit of Geyen.[1] The Debtor would retain the right to the income from the stock for the term of the trust, which was 10 years. At the end of the term, the stock was to pass to Geyen. Defendant Sidney Kaplan ("Kaplan") was named trustee for the GRIT. The GRIT was an irrevocable trust; therefore, Kaplan was obligated to transfer the stock to Geyen at the end of the 10 year term.

4. Because DBCI held the Debtor's stock certificate, it could not be physically transferred to the trust. However, Kaplan was unaware that Certificate No. 1 had been pledged. Instead, he assumed, as is typical for closely held businesses, that the Certificate was held by the corporate attorney for Al & Alma's in the corporate record book. Accordingly, he contacted Al & Alma's corporate attorney, Robert Abdo ("Abdo"), and named him as an agent of the GRIT to retain the physical stock certificate.

5. Having been advised that the Debtor transferred his stock to the GRIT, Al & Alma's issued Certificate No. 4 in late 1989 or early 1990, which named the GRIT as the owner of 50 shares in Al & Alma's. The intention at the time was that Certificate No. 4 would replace Certificate No. 1. As requested by Kaplan, Abdo initially held Certificate No. 4 for the benefit of the GRIT.

6. In December of 1990, Abdo contacted counsel for DBCI, advising that the Debtor's shares in Al & Alma's had been transferred to the GRIT. In order to complete the transfer, Abdo requested that DBCI return Certificate No. 1 in exchange for Certificate No. 4. Some time later, in April of 1992, counsel for DBCI indicated that, upon receipt of Certificate No. 4 and a new pledge agreement executed by the GRIT, DBCI would return Certificate No. 1 to Al & Alma's.

---

1. The Trustee asserts that the transfer of stock to the GRIT was invalid from the outset because the trust documents indicated that the trust estate consisted of 1,000 shares in Al & Alma's Supper Club *Inc.* In fact, the Debtor owned only 50 shares in Al & Alma's Supper Club *Corporation.* However, the trust documents indicate that the trust estate also includes "any other property which may be transferred, assigned, and delivered to the Trustee." Thus, if the stock was actually transferred to the GRIT, it became property of the trust estate notwithstanding the initial error in the description.

7. Abdo immediately forwarded Certificate No. 4 to counsel for DBCI. However, there was some delay in preparing and executing the pledge agreement. Kaplan, as trustee of the GRIT and a fiduciary for Geyen, refused to sign the pledge agreement on behalf of the GRIT unless Geyen and the Debtor provided written authorization and an agreement to hold him harmless. The Debtor and Geyen initially failed to provide such authorization. However, on July 15, 1993, after the loan underlying the pledge had been refinanced, the Debtor and Geyen provided the necessary authorization for Kaplan to pledge the stock in connection with the refinanced loan.

8. On September 2, 1993, the pledge agreement was finally delivered to counsel for DBCI. At that time, counsel for DBCI indicated that Certificate No. 1 was lost or destroyed. Accordingly, Certificate No. 1 was not returned to Al & Alma's, and it was never actually cancelled. In fact, despite belief that Certificate No. 1 had been misplaced, DBCI continued to hold it.

9. The status of the stock certificates remained unchanged when the Debtor's bankruptcy case was commenced on February 10, 1999, on the filing of an involuntary Chapter 7 petition. On February 16, 1999, the Debtor voluntarily converted the case to one under Chapter 11. The schedules filed by the Debtor did not indicate any ownership interest in Al & Alma's. The Debtor's disclosure statement indicated that he had transferred the stock in Al & Alma's to the GRIT ten years before.

10. On May 19, 1999, the Debtor's case was converted, over the Debtor's objection and at the urging of virtually all his creditors, back to a Chapter 7 proceeding. The Trustee was appointed to serve as the trustee of the Debtor's case. The Trustee demanded that the income owed to the Debtor pursuant to the GRIT be paid to the bankruptcy estate. Pursuant to this demand, Al & Alma's paid $116,115 to the Trustee as the Debtor's share of the 1998 annual income.

11. The Trustee deposed Kaplan, a small portion of which focused on the GRIT and the Al & Alma's stock. Specifically, the Trustee asked whether there was a stock certificate indicating the GRIT's ownership of the stock. Kaplan testified that he believed there was, but that it was not in his possession.

12. The term of the GRIT expired on October 10, 1999, which was during the pendency of the Debtor's bankruptcy case. Pursuant to the terms of the GRIT, Kaplan took steps to transfer the trust estate to Geyen. In furtherance thereof, Kaplan requested that DBCI return Certificate No. 4, which evidenced the GRIT's ownership interest in Al & Alma's. Instead, DBCI delivered Certificate No. 1, which had purportedly been lost and indicated the Debtor's ownership interest in Al & Alma's.

13. Having not received the necessary certificate, Kaplan contacted Abdo, Al & Alma's corporate counsel, in search of Certificate No. 4. Abdo provided Kaplan with a copy of Certificate No. 4 and a copy of the letter transmitting Certificate No. 4 to DBCI. With this information, Kaplan was able to complete the transfer of Certificate No. 4 to Geyen in accordance with the terms of the GRIT without have obtained physical custody of Certificate No. 4. Abdo later received the original Certificate No. 4 from DBCI. He stamped it "VOID" and, on behalf of Al & Alma's, issued new Certificate No. 5, indicating Geyen's ownership of 50 shares of stock in Al & Alma's.

14. In the meantime, Kaplan was in possession of Certificate No. 1. He regarded this Certificate as defunct, having been replaced by Certificate No. 4. Kaplan, therefore, marked on Certificate No. 1 that it had been assigned and transferred by the Debtor to the GRIT on October 10, 1989. He then forwarded Certificate No. 1 to Abdo. Abdo received the Certificate in early November 1999 and, also regarding it as defunct, marked it "VOID."

14. Meanwhile, the Trustee continued his investigation into the Debtor's assets. Trustee issued a subpoena to Al & Alma's requesting that the corporation produce all of its corporate records. In connection therewith, the Trustee received certain tax documents and other corporate records that still regarded the Debtor as a 50% shareholder even after the transfer of his shares to the GRIT. The Trustee also discovered that the minutes of Al & Alma's annual meetings from 1991 to 1999 were all created in November of 1999 using estimated dates and times of the meetings.

15. Pursuant to the subpoena of its corporate records, Al & Alma's also turned over the original Certificate No. 1, which at that point indicated that it was void. The Trustee then discovered that Certificate No. 1 had been altered during the pendency of the bankruptcy.

16. The Trustee, believing that the transfer of Certificate No. 1 to the GRIT was invalid, brought the present adversary proceeding, which contained five counts.[2] The first three counts contend that, because the transfer of Certificate No. 1 had never been completed, Certificate No. 1 was property of the estate. Thus, the transfer of the stock to the GRIT and, ultimately, to Geyen in October of 1999 constituted an avoidable postpetition transfer, conversion of estate property, and/or a stay violation. Count four contends that any transfer of Certificate No. 1 to the GRIT was never perfected and, thus, was avoidable as a fraudulent or preferential transfer. Count five asserts that, even if the transfer to the GRIT was perfected, it was a sham transfer, and the Debtor remained a 50% shareholder in Al & Alma's. At its core, the complaint seeks a finding that the estate is the owner of the 50 shares in Al & Alma's and that alteration

of Certificate No. 1 postpetition was in violation of the Bankruptcy Code.

17. The Defendants answered that Certificate No. 1 was no longer a viable document. They contend that Certificate No. 1 was replaced by Certificate No. 4, and transfer of Certificate No. 4 was perfected long before the Debtor's bankruptcy case. Thus, they allege that the transfer is not avoidable and the estate has no interest in the 50 shares of Al & Alma's. Accordingly, the alteration of Certificate No. 1 during the pendency of the bankruptcy case was in no way a violation of the Bankruptcy Code. They further contend that, even if the estate has an interest in Al & Alma's through Certificate No. 1, such interest is subject to any defenses that Al & Alma's would have against the Debtor, namely that the Certificate had been cancelled.

18. The Defendants moved for summary judgment on all counts based upon the above-described defenses. The Trustee filed a cross-motion for summary judgment only as to count four of the complaint.

## CONCLUSIONS OF LAW

I. Standard for Summary Judgment

Summary judgment is governed by Federal Rule of Civil Procedure 56, which is made applicable to this adversary proceeding by Bankruptcy Rule 7056. Federal Rule 56 provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

---

2. The Trustee subsequently filed two amended complaints. The substance of the complaint remained essentially unchanged with each amendment. The Trustee made the first amendment to include Sidney Kaplan as trustee for the GRIT as a defendant rather than simply naming the GRIT. The second amendment specified that the Trustee sought to avoid both the transfer to the GRIT and the subsequent transfer by the GRIT to Geyen. It further specified that the Trustee was acting with respect to both Certificate No. 1 and the shares represented thereby.

**154**

moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c). The moving party on summary judgment bears the initial burden of showing that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party is the plaintiff, it carries the additional burden of presenting evidence that establishes all elements of the claim. *Id.* at 325, 106 S.Ct. 2548; *United Mortg. Corp. v. Mathern (In re Mathern),* 137 B.R. 311, 314 (Bankr. D.Minn.1992), *aff'd,* 141 B.R. 667 (D.Minn. 1992). When the moving party has met its burden of production under Rule 56(c), the burden then shifts to the nonmoving party to produce evidence that would support a finding in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). This responsive evidence must be probative, and must "do more than simply show that there is some metaphysical doubt as to the material fact." *Id.* If the nonmoving party fails to come forward with specific facts showing that there is a genuine issue for trial, summary judgment is appropriate. *Id.* at 587, 106 S.Ct. 1348; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–51, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## II. Uniform Commercial Code—Investment Securities

At its core, this case presents the question of whether the Debtor properly completed the transfer of the 50 shares in Al & Alma's to the GRIT. The answer turns on the determination of which certificate properly represents the ownership of the 50 shares. The Trustee's claims all rely on the fact that the proper certificate is Certificate No. 1. The Defendants' defenses, for the most part, require that Certificate No. 4 represent the true ownership interest. To resolve the dispute, I must first take a step back and determine the applicable law and how its operation affects the issues before the court.

Article 8 of the Uniform Commercial Code, set out at Minn.Stat. § 336.8–101 – 8.408, governs procedures for negotiation and transfer of investment securities.[3] *Beck v. American Sharecom, Inc.,* 514 N.W.2d 584, 588 (Minn.Ct.App.1994). In general, the Article deals with both certificated and uncertificated securities. *See* Minn.Stat. § 336.8–102(1)(c). A certificated security is

a share, participation, or other interest in property of or an enterprise of the issuer or an obligation of the issuer which is

 (i) represented by an instrument issued in bearer or registered form;

 (ii) of a type commonly dealt in on securities exchanges or markets or commonly recognized in any area in which it is issued or dealt in as a medium for investment; and

 (iii) either one of a class or series or by its terms divisible into a class or series of shares, participations, interests, or obligations.

Minn.Stat. § 336.8–102(1)(a). A certificated security is in registered form if

 (i) It specifies a person entitled to the security or the rights it represents, and

 (ii) Its transfer may be registered upon books maintained for that purpose by or on behalf of the issuer, or the security so states.

Minn.Stat. § 336.8–102(1)(d).

 Both of the certificates at issue in this case are properly considered certificated securities governed by Article 8. First, the certificates are instruments issued in registered form, as required by subpart (1)(a)(i). That is, each specifies that either the Debtor or the GRIT is the party entitled to the security, and each indicates that it must be transferred on the books of the corporation. *See* Minn.

---

**3.** The relevant version of Article 8 for purposes of this opinion is the version repealed in 1995. All citations, unless otherwise specified, are to that version.

Stat. § 336.8–102(1)(d). Further, the sequential numbering of each certificate clearly indicates that each is one of a class or series, as required by subpart (1)(a)(iii).

The more difficult question is whether the certificates are of a type commonly dealt in on securities exchanges. A few courts hold that shares in a closely-held family corporation, such as Al & Alma's, do not fulfill this requirement. *See Stancil v. Stancil,* 326 N.C. 766, 392 S.E.2d 373, 375 (1990) (citing cases). However, the majority of courts hold that shares in a closely-held family corporation do, in fact, meet this element of the definition. *Stancil,* 392 S.E.2d at 376 ("Stock certificates for shares of any corporation—whether publicly or closely held—are instrumentalities of trade and commerce which are 'of a type' commonly dealt in on securities exchanges or markets."); *Jennison v. Jennison,* 346 Pa.Super. 47, 499 A.2d 302, 304 (1985) ("Shares of stock in a closely held corporation are, after all, shares of stock, which are clearly instruments 'of a type' commonly dealt in on securities exchanges or markets."); *Wamser v. Bamberger,* 101 Wis.2d 637, 305 N.W.2d 158, 162 (Ct.App. 1981); *see also* Official Comment U.C.C. § 8–102 ("Interests such as the stock of closely held corporations, although they are not actually traded upon securities exchanges, are intended to be included within the definition of ... securities by the inclusion of interests 'of a type' commonly traded in those markets."). I believe that these cases represent the better view; and, therefore, I conclude that the certificates at issue in this case are certificated securities as defined by Minn.Stat. § 336.8–102(1)(a).

Section 336.8–105(1) provides that certificated securities are negotiable instruments. Minn.Stat. § 336.8–105(1). Thus, they are treated much like promissory notes under Article 3 of the Uniform Commercial Code, although Article 8 specifically provides that Article 3 does not apply. Minn.Stat. § 336.8–102(1)(c).

The clear intent of Article 8 is to make certificated securities easily transferable. *See, e.g., Dempsey–Tegeler & Co. v. Otis Oil & Gas Corp.,* 293 F.Supp. 1383, 1385 (D.Colo.1968). In this regard, numerous responsibilities are imposed upon the issuer of the security. For instance, § 8–202(2) provides that

> a certificated security in the hands of a purchaser for value, even though issued with a defect going to its validity, is valid with respect to the purchaser if he is without notice of the particular defect unless the defect involves a violation of constitutional provisions, in which case the security is valid with respect to a subsequent purchaser for value and without notice of the defect.

Minn.Stat. § 336.8–202(2);[4] *see also Dempsey–Tegeler,* 293 F.Supp. at 1386–87.

Similarly, except for the defense of lack of genuineness,[5] "all ... defenses of the issuer of a certificated ... security, including nondelivery and conditional delivery of a certificated security, are ineffective against a purchaser for value who has taken without notice of the particular defense." Minn.Stat. § 336.8–202(3), (4).

Finally, Section 8–401(1) requires that, upon meeting certain requirements, an issuer must register any transfer when a certificated security is presented to it for such purpose. Minn.Stat. § 336.8–401(1).

---

**4.** A purchaser is one who takes by "sale, discount, negotiation, mortgage, pledge, lien, issue or reissue, gift, or any other voluntary transaction creating an interest in property." Minn.Stat. § 336.1–201(32), (33).

A subsequent purchaser "is a person who takes other than by original issue." Minn.Stat. § 336.8–102(2).

A person has notice of a fact when that person "(a) has actual knowledge of it; or (b) has received a notice or notification of it; or (c) from all the facts and circumstances known to that person at the time in question, has reason to know that it exists." Minn.Stat. § 336.1–201(25).

**5.** Minn.Stat. § 336.1–201(18) provides that genuine means "free of forgery or counterfeiting."

■ Thus, if a purchaser for value presents a certificated security to the issuer for registration of a transfer, the issuer must register the transfer, notwithstanding the validity of the initial issuance of the certificated security or any defense of the issuer, so long as the purchaser took without notice. *Dempsey–Tegeler*, 293 F.Supp. at 1385–86. Moreover, § 8–104 implicitly recognizes that an issuer's responsibilities may require it to issue additional certificated securities representing new interests in the issuer. *See* Minn. Stat. § 336.8–104 (providing alternative remedies if an issuer must issue additional certificated securities but such issue would exceed the number of shares the issuer is authorized to sell by its articles of incorporation); *see also* Minn.Stat. § 336.8–102(1)(c) (noting that if a security is certificated the term "certificated security" may mean either the intangible interest, the instrument representing that interest, or both, as the context requires).

This point is further supported by considering § 8–405, which deals with lost, destroyed and stolen certificated securities. Minn.Stat. § 336.8–405. It provides, in relevant part, as follows:

> (2) If the owner of a certificated security claims that the security has been lost, apparently destroyed, or wrongfully taken, the issuer shall issue a new certificated security or, at the option of the issuer, an equivalent uncertificated security in place of the original security if the owner:
>
>> (a) so requests before the issuer has notice that the security has been acquired by a bona fide purchaser;
>>
>> (b) files with the issuer a sufficient indemnity bond; and
>>
>> (c) satisfies any other reasonable requirements imposed by the issuer.
>
> (3) If, after the issue of a new certificated or uncertificated security, a bona fide purchaser of the original certificated security presents if for registration of

transfer, the issuer shall register the transfer unless registration would result in overissue, in which event the issuer's liability is governed by Section 336.8–104. In addition to any rights on the indemnity bond, the issuer may recover the new certificated security from the person to whom it was issued or any person taking under him except a bona fide purchaser or may cancel the uncertificated security unless a bona fide purchaser or any person taking under a bona fide purchaser is the registered owner or registered pledgee thereof.

Minn.Stat. § 336.8–405; *see also Mazer v. Williams Bros. Co.*, 461 Pa. 587, 337 A.2d 559 (1975).

■ Under this provision, even though the issuer has a valid defense that the certificate presented for registration by the bona fide purchaser was replaced by a subsequent certificate, it must still recognize the original certificate and register the transfer. Because the original certificate has been replaced, the registration of its transfer will, in effect create new or additional interests in the issuer unless or until the issuer is able to recover the new certificated security.[6]

■ Taken as a whole, the unambiguous import of Article 8 is that the issuer of the certificated security bears the risk of improperly issued securities or other defects.

It was the intention of the drafters to place the full burden of complying with the applicable laws governing the issuance of securities upon the issuer rather than the purchaser. The basic idea, as between the issuer and purchaser, was that it was the issuer's responsibility to see that the securities issued were legally and properly issued.

In the event of some defect going to the validity of the security, therefore, the issuer would be estopped from asserting such a defect.

---

6. This effect is limited in the event that the registration of the transfer would result in an overissue. Minn.Stat. §§ 336.8–405(3), 8–104.

2 Thomas M. Quinn, *Quinn's Uniform Commercial Code Commentary & Law Digest* ¶ 8–202[A][3] (2d ed.1991).

■ Based upon this comprehensive reading of Article 8, I conclude that both Certificate No. 1 and Certificate No. 4 were valid certificated securities *vis a vis* the issuer, Al & Alma's, at the time the Debtor's bankruptcy petition was filed. Had a purchaser for value and without notice obtained Certificate No. 1 in February of 1999 and presented it to Al & Alma's for registration, Al & Alma's would have been required to register the transfer. *See* Minn.Stat. § 336.8–401(1). Al & Alma's could not defend on the basis that Certificate No. 1 had been replaced by Certificate No. 4. *See* Minn.Stat. § 336.8–202(4); *cf.* Minn.Stat. § 336.8–405(3).

Similarly, if a purchaser for value and without notice obtained Certificate No. 4 in February of 1999 and presented it to Al & Alma's for registration, Al & Alma's would have been required to register that transfer as well. *See* Minn.Stat. § 336.8–401(1). In this case, Al & Alma's could not defend on the basis that Certificate No. 4 had been improperly issued on the assumption that it would replace Certificate No. 1. *See* Minn.Stat. § 336.8–202(2); *cf.* Minn.Stat. § 336.8–405(3).

Moreover, Al & Alma's cannot defend on the basis that registration of both securities would, in effect, create 50 new shares of stock. Article 8 implicitly directs that the issuer bear the risk of the issuance of additional stock when necessary to assure the swift transfer of securities. *See* Minn. Stat. § 336.8–104; 8–405(3). The only exception is where such issuance would exceed the issuer's authorized number of shares. Minn.Stat. § 336.8–104. At all times Al & Alma's was authorized to issue 1,000 shares. At most, it issued 150 shares. Thus, the exception provided in Minn.Stat. § 336.8–104 is inapplicable to this case.

In sum, neither party is entirely correct. The interest in Al & Alma's is not solely represented by either Certificate No. 1 or Certificate No. 4. Both certificates were valid and outstanding securities on the date of the Debtor's bankruptcy petition. Al & Alma's bore the risk that each certificate would represent a separate interest in the corporation when it issued Certificate No. 4 without first cancelling Certificate No. 1. Accordingly, I must consider the Trustee's claims with respect to each certificate.

## III. Transfer Avoidance

I will begin with Count 4 of the Trustee's complaint. In Count 4, the Trustee seeks to avoid the transfer of the 50 shares in Al & Alma's to the GRIT. The Trustee sets forth alternative theories that the transfer was either a preferential transfer pursuant to 11 U.S.C. § 547 or a fraudulent transfer pursuant to § 548(a)(1)(B).

Section 547 of the Bankruptcy Code provides in relevant part that the trustee may avoid any transfer of an interest of the debtor in property: (1) to or for the benefit of a creditor; (2) for or on account of an antecedent debt owed by the debtor before such transfer was made; (3) made while the debtor was insolvent; (4) made on or within 90 days before the date of the filing of the petition or, with respect to a transfer to an insider, within one year thereof; and (5) that enables the creditor to receive more than it would receive in a Chapter 7 liquidation. 11 U.S.C. § 547(b); *see Harstad v. First Am. Bank,* 39 F.3d 898, 901 n. 4 (8th Cir.1994).

Section 548(a)(1)(B) of the Bankruptcy Code provides that the trustee may avoid a transfer if (1) the debtor had an interest in the property transferred; (2) the transfer occurred within one year of the petition date; (3) the debtor was insolvent at the time of the transfer or became insolvent as a result of it; and (4) the debtor received less than a reasonably equivalent value in exchange for the transfer. 11 U.S.C. § 548(a)(1)(B); *Breeden v. L.I. Bridge Fund, LLC (In re Bennett Funding Group, Inc.),* 232 B.R. 565, 570 (Bankr.

N.D.N.Y.1999); *Harker v. Center Motors, Inc.* (*In re Gerdes*), 246 B.R. 311, 313 (Bankr.S.D.Ohio 2000).

Both of these sections, as they apply to this case, require a transfer within one year of the petition date. The Bankruptcy Code defines transfer as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property." 11 U.S.C. § 101(54). Pursuant to Article 8, however, a transfer of a certificated security occurs *only:*

> (a) at the time [the purchaser] or a person designated by him acquires possession of a certificated security;

> . . . . .

> ■ (e) with respect to an identified certificated security to be delivered while still in the possession of a third person, not a financial intermediary, at the time that person acknowledges that he holds for the purchaser.

Minn.Stat. § 336.8–313(1)(a), (e).[7] Generally speaking, Article 8 requires delivery or its legal equivalent, with intent to change ownership, in order to effectuate a transfer. *DLH, Inc. v. Russ,* 566 N.W.2d 60, 72 (1997); *Beck,* 514 N.W.2d at 588

With respect to Certificate No. 1, a transfer never occurred in accordance with the provisions of Article 8. At all relevant times, Certificate No. 1 remained in the hands of DBCI. Therefore, neither the GRIT nor any person designated by the GRIT ever obtained possession of Certificate No. 1. Moreover, the evidence is undisputed that DBCI never acknowledged that it was holding Certificate No. 1 for the GRIT.[8]

Nevertheless, the Defendants argue that Certificate No. 1 was constructively delivered under common law. Minn.Stat. § 336.1–103 provides that, "[u]nless displaced by the particular provisions of this chapter, the principles of law and equity . . . shall supplement its provisions."

■ The plain language of § 8–313 strongly suggests that it intended to displace the principles of common law by stating that a transfer occurs "only" when its terms are met. *See* Minn.Stat. § 336.8–313. Indeed, the Minnesota Court of Appeals has held that "[t]he methods of transfer listed in the statute are exclusive and compliance with one of them is essential to a valid transfer." *Beck,* 514 N.W.2d at 588; *see also* Official Comment U.C.C. § 8–313. Thus, I find that the Defendants' claim of constructive delivery is inapplicable because the methods of transfer set forth in § 8–313 are exclusive.[9] Because Certificate No. 1 was not transferred pursuant to the requirements of § 8–313, it was never transferred and remained property of the Debtor. Accordingly, the Trustee has no need to use either § 547 or § 548 of the Bankruptcy Code in order to avoid the transfer. Certificate No. 1 became property of the estate upon the commencement of the Debtor's bankruptcy case. 11 U.S.C. § 541(a).

■ On the other hand, Certificate No. 4 was validly transferred to the GRIT. The evidence is undisputed that Al & Alma's delivered Certificate No. 4 to Abdo in late 1989 or early 1990. Abdo had been designated by Kaplan to take possession of the certificate. Thus, pursuant to § 8–313(1)(a), Certificate No. 4 was transferred

---

7. Although § 8–301 provides several other ways by which a transfer can occur, only these two could conceivably apply to the certificates at issue here.

8. The fact that the transaction at issue was a gift rather than a purchase for value does not affect the applicability of § 8–313 because a purchase includes taking by gift. Minn.Stat. § 336.1–201(32).

9. The cases relied upon by the Defendants in support of their theory that the constructive delivery theory remains viable all utilize a version of Article 8 that omits the word "only." *See Kallop v. McAllister,* 678 A.2d 526 (Del.1996); *Zaharion v. Security Nat'l Bank,* 95 Mich.App. 70, 290 N.W.2d 84 (1980).

to the GRIT when Abdo acquired possession.

Even if the transfer was not completed with the delivery to Abdo, the transfer was subsequently completed no later than 1993. Pursuant to § 8–313(e), a transfer occurs when a third party holding the security acknowledges that it holds for the purchaser. DBCI held Certificate No. 4 beginning in April of 1992. At that point, it demanded that the GRIT sign the pledge agreement rather than the Debtor. It is logical to infer that this demand was an acknowledgment that it was holding Certificate No. 4 for the GRIT. Otherwise, there was no reason to have a signed pledge agreement from the GRIT instead of the Debtor. Under this theory, DBCI acknowledged that it was holding the certificate for the GRIT at least by September 2, 1993, when it received an copy of the pledge agreement executed by the GRIT.

Thus, the transfer of Certificate No. 4 occurred no later than September 2, 1993. Because both § 547 and § 548(a)(1)(B) require a transfer within one year of the date of the petition, neither affords the Trustee with grounds for avoiding the transfer of Certificate No. 4.

Based upon the foregoing, I find that there are no genuine issues of material fact. The Trustee is entitled to judgment as a matter of law declaring that Certificate No. 1 was property of the estate at the commencement of the Debtor's bankruptcy proceeding. The Defendants are entitled to judgment as a matter of law declaring that Certificate No. 4 was properly delivered to the GRIT by at least 1993 and, therefore, cannot be the subject of an avoidance action by the Trustee.

## IV. Unauthorized Transfer, Conversion, Automatic Stay

The first three counts of the Trustee's complaint allege that the Defendants' postpetition actions cancelling Certificate No. 1 and transferring Certificate No. 4 to Geyen constituted unauthorized postpetition transfers avoidable under § 549, conversion, and violations of the automatic stay.

Count One is based upon Bankruptcy Code § 549. It provides, in relevant part, that "the trustee may avoid a transfer of property of the estate—(1) that occurs after the commencement of the case; and (2) ... (B) that is not authorized under this title or by the court." 11 U.S.C. § 549(a); *see Snyder v. Dewoskin (In re Mahendra )*, 131 F.3d 750, 755 (8th Cir.1997).

Count Two alleges that the Defendants' actions constituted conversion. Conversion is the wrongful exercise of dominion or control over the property of another. *Bates v. Armstrong*, 603 N.W.2d 679, 682 (Minn.Ct.App.2000); *Impulse Trading, Inc. v. Norwest Bank Minn., N.A.*, 870 F.Supp. 954, 958 (D.Minn.1994). To state a cause of action for conversion, a plaintiff must establish: (1) ownership of the property or a right to the property; and (2) that the defendant's actions were inconsistent with that right. *Impulse Trading*, 870 F.Supp. at 958. Conversion may be established by proof of some act that changes the character of the property or permanently deprives the owner of it. *Bates*, 603 N.W.2d at 682.

Count Three contends that the Defendants violated the automatic stay. Section 362(a) of the Bankruptcy Code provides that: "a petition [under Title 11] operates as a stay, applicable to all entities, of—(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). The automatic stay is fundamental to the bankruptcy process and is intended to be broad. *Small Business Administration v. Rinehart*, 887 F.2d 165, 167–68 (8th Cir. 1989).

A fundamental component of each of these Counts is that the actions of the Defendants relate to property of the estate. *See* 11 U.S.C. §§ 362(a)(3); 549(a); *Impulse Trading*, 870 F.Supp. at 958 (requiring that the plaintiff show ownership

of the property). Because of this requirement, the Trustee cannot succeed on any of the three counts with respect to Certificate No. 4. As addressed above, Certificate No. 4 was validly and properly transferred to the GRIT no later than 1993. It did not become property of the estate upon commencement of this bankruptcy proceeding, and no avoidance action can bring it into the estate. Accordingly, I find that there are no genuine issues of material fact, and the Defendants are entitled to judgment as a matter of law on Counts One, Two, and Three insofar as they relate to Certificate No. 4.

To the contrary, I have already determined that Certificate No. 1 became property of the estate upon the commencement of the Debtor's bankruptcy case. Moreover, the Defendants do not dispute that Kaplan altered Certificate No. 1 postpetition to indicate that it had been transferred to the GRIT. They also do not dispute that Abdo, as counsel for Al & Alma's, later marked the certificate void.

■ These acts establish each of the Trustee's claims. The cancellation of the certificate and transfer back to Al & Alma's was unauthorized and occurred postpetition. See 11 U.S.C. § 101(54) (defining transfer); Minn.Stat. § 336.8–313(a) (defining transfer with respect to certificated securities). Thus, pursuant to § 549(a), the Trustee is entitled to avoid the transfer. 11 U.S.C. § 549(a).

■ With respect to Count Two, I have already concluded that Certificate No. 1 was property of the estate. Therefore, the Trustee need only prove that the Defendants' actions were inconsistent with the estate's interest. *Impulse Trading*, 870 F.Supp. at 958. The undisputed evidence establishes that the Defendants' actions changed Certificate No. 1 from a valid and outstanding security to a void security. Thus, the Trustee has proved that the

Defendants committed an act that changed the character of the property. *See Bates*, 603 N.W.2d at 682. Such act was inconsistent with the estate's interest in the property. Accordingly, the Trustee is entitled to judgment on his conversion claim.

■ Finally, the Defendants' actions clearly exercised control over property of the estate. Therefore, the undisputed evidence establishes that the Defendants violated the automatic stay. See 11 U.S.C. § 362(a)(3).

Accordingly, I find that, even though the Trustee did not move for summary judgment on these three counts, the facts of this case present an appropriate circumstance to grant summary judgment in favor of the non-moving party. *See Saeger v. ITT Fin. Servs. (In re Saeger)*, 119 B.R. 184, 190 (Bankr.D.Minn.1990) (citing *In re Caravan Refrigerated Cargo, Inc.*, 864 F.2d 388, 393 (5th Cir.1989)). There are no genuine issues of material fact. The Trustee is entitled to judgment as a matter of law declaring that the postpetition actions of the Defendants with respect to Certificate No. 1 constituted an avoidable postpetition transfer, conversion, and a violation of the automatic stay.

However, in order to recover from the Defendants, the Trustee must also establish that the estate was damaged by the Defendants' acts. Therefore, I must consider what value Certificate No. 1 held for the estate.

■ Ordinarily, a purchaser of a certificated security "acquires all rights in the security that the transferor had or had power to transfer." Minn.Stat. § 336.8–302 (Supp.2000).[10] Furthermore, a purchaser who: (1) gives value; (2) does not have notice of any adverse claim to the security; and (3) obtains control of the security, is a protected purchaser. Minn. Stat. § 336.8–303(a). A protected purchaser, in addition to acquiring the rights

---

**10.** The transfer of Certificate No. 1 from the Debtor to the Trustee occurred after the enactment of revised Article 8. Therefore, all references to Article 8 in this section of the opinion refer to the version adopted in 1995.

of a purchaser, "also acquires its interest in the security free of any adverse claim." Minn.Stat. § 336.8–303(b).[11] In addition, as discussed more fully above, a purchaser for value and without notice, takes the security free of any defense of the issuer, including a defense that the security has a defect going to its validity. Minn.Stat. § 336.8–202.

Based upon these provisions, it is apparent that, prior to the bankruptcy and under certain circumstances, the Debtor could have transferred Certificate No. 1 to a purchaser free of any claim that the GRIT actually owned the shares represented by Certificate No. 1 and free of any defense of Al & Alma's that Certificate No. 4 had replaced Certificate No. 1. *See* Minn. Stat. § 336.8–303(b); 8–202. However, by the plain terms of the statute, the Trustee does not meet the requirements to be a protected purchaser because he did not give value to obtain the securities. *See* Minn.Stat. § 336.8–303(a). He also does not take free of the issuer's defenses for this same reason. *See* Minn.Stat. § 336.8–202 (requiring a purchaser for value).

Therefore, at most, the Trustee acquired the rights in Certificate No. 1 that the Debtor had at the time of the transfer. *See* Minn.Stat. § 336.8–302(a). It is beyond dispute that the Debtor was on notice of the claim of the GRIT to the shares represented by Certificate No. 1 and of the defense of Al & Alma's that Certificate No. 4 had replaced Certificate No. 1. Therefore, the Debtor held Certificate No. 1 subject to these defenses. Pursuant to § 8–302(a), the Trustee also took subject to these defenses. Minn.Stat. § 336.8–302(a).

However, to acquire the rights held by the Debtor, § 8–302(a) requires that the Trustee be a purchaser. As noted above, a purchaser is a person who takes by "sale, discount, negotiation, mortgage, pledge, lien, issue or reissue, gift, or any other voluntary transaction." Minn.Stat. § 336.1–201(32), (33). Thus, in order to qualify as a "purchaser," the Trustee must have acquired Certificate No. 1 by some type of voluntary transaction. *See Mazer v. Williams Bros. Co.,* 461 Pa. 587, 337 A.2d 559, 562 (1975) (applying identical version of prior Article 8). As noted in the Official Comments,

> Transfers by operation of law are not intended to be covered by this Article. For example, transfers from decedent to administrator, from ward to guardian, and from bankrupt to trustee in bankruptcy are governed by other law as to both the time they occur and the substance of the transfer.

Official Comment U.C.C. § 8–301.

■ Because the Trustee acquired Certificate No. 1 by operation of law and not by voluntary transfer, the Trustee's rights are determined under the Bankruptcy Code and not by § 8–302(a). However, under the Bankruptcy Code, the estate succeeds to only such title and rights in the property as the debtor had at the time the petition was filed. *N.S. Garrott & Sons v. Union Planters Nat'l Bank,* 772 F.2d 462, 467 (8th Cir.1985). Consequently, the result is the same. The Trustee holds Certificate No. 1 subject to the defenses of the GRIT and Al & Alma's.[12]

---

**11.** An adverse claim is "a claim that a claimant has a property interest in a financial asset and that it is a violation of the rights of the claimant for another person to hold, transfer, or deal with the financial asset." Minn.Stat. § 336.8–102(a)(1).

**12.** Although not fully briefed to the court, the Trustee also suggested that §§ 544 and 551 of the Bankruptcy Code may improve the Trustee's position. However, neither of these sec-

tions makes the Trustee a protected purchaser under Article 8. Section 544 only makes the Trustee a bona fide purchaser with respect to real estate. 11 U.S.C. § 544(a). Accordingly, that section does not help the Trustee's position. Section 551 only applies to avoided transfers. 11 U.S.C. § 551. Because I have found that there is no transfer to avoid with respect to Certificate No. 1, § 551 is inapplicable.

The evidence is undisputed that Certificate No. 4 was intended to replace Certificate No. 1 and to represent the same 50 shares of stock in Al & Alma's. Thus, it is also undisputed that the GRIT and Al & Alma's have valid defenses against the Trustee's claim to Certificate No. 1. While a purchaser for value or a protected purchaser would take free of these defenses, the Trustee does not. Accordingly, if the Trustee were to present Certificate No. 1 to Al & Alma's, the corporation would not have to register the transfer. In short, Certificate No. 1 has no value to the estate.

Accordingly, the Trustee cannot prove that it incurred any damages as a result of the Defendants' actions with respect to Certificate No. 1. Although I found that such actions constituted an avoidable postpetition transfer, conversion, and a violation of the automatic stay, the Trustee is not entitled to any money judgment as a result thereof.

V. Sham Transfer

 The final count of the Trustee's complaint alleges that even if a transfer of the shares in Al & Alma's was completed as a matter of law, such transfer was a sham.[13] In essence, the Trustee contends that the Debtor retained control over the shares notwithstanding the purported transfer. The Trustee has pointed to significant evidence suggesting that his contention is true. Certain tax documents and other corporate records of Al & Alma's continue to reflect the Debtor as a 50% shareholder even after the transfer of his shares to the GRIT. Moreover, Kaplan, as trustee for the GRIT, did not attend any shareholder's meetings or participate in the corporation to any significant extent.

The Defendants respond that the continued participation of the Debtor was the result of the peculiar nature of a grantor retained income trust. Because the Debtor was entitled to receive all of the income from the stock, it was only logical to list the Debtor as the shareholder for tax purposes. The Defendants further contend that other instances where the Debtor was referred to as a shareholder were merely inadvertent.

I find that there is a genuine issue of material fact as to whether the transfer of the shares was a sham. Accordingly, summary judgment is not appropriate for Count 5.

ACCORDINGLY, IT IS HEREBY ORDERED THAT:

1. Certificate No. 1 in Al & Alma's Supper Club Corp. became property of the estate upon the filing of the Debtor's bankruptcy petition. Accordingly, Count Four of the Trustee's complaint, insofar as it applies to Certificate No. 1, is dismissed as moot.

2. Certificate No. 4 in Al & Alma's Supper Club Corp. was validly transferred to the Bame Grantor Retained Income Trust more than one year prior to the Debtor's bankruptcy petition. Accordingly, summary judgment shall be entered in favor of the Defendants and against the Trustee as to Count Four of the Trustee's complaint insofar as it relates to Certificate No. 4.

3. Summary judgment shall be entered in favor of the Defendants and against the Trustee as to Counts One, Two, and Three of the Plaintiff's complaint to the extent such Counts relate to Certificate No. 4.

4. Summary judgment shall be entered in favor of the Trustee and against the Defendants as to Counts One, Two and Three of the Trustee's complaint to the extent such Counts relate to Certificate No. 1. Such judgment shall declare that the acts of the Defendants constituted an avoidable postpetition transfer of Certificate No. 1, conversion of Certificate No. 1, and a violation of the automatic stay. No

---

13. This count can only apply to Certificate No. 4 as I have already determined that no transfer occurred with respect to Certificate No. 1.

monetary judgment shall be entered in connection therewith.

5. The Defendants' motion for summary judgment is DENIED with respect to Count 5 of the Trustee's complaint.

6. There being issues pending in the case and no justification for making the express determination and direction required by Bankruptcy Rule 7054, applying Federal Rule of Civil Procedure 54(b), judgment shall not be entered at this time.